[No. 23223.   Department Two.   July 20, 1931.]

THE STATE OF WASHINGTON, *Respondent*, v. JACK RYAN, *Appellant*.[1]

*Donovan & Donovan,* for appellant.

*Chas. W. Greenough* and *Ralph E. Foley,* for respondent.

BEELER, J.—Jack Ryan, Grace Pierson, and Catherine Carmody were charged by information with the crime of being jointists. Catherine Carmody was acquitted. The other two defendants were convicted. Motion for a new trial being made and overruled, they

[1]Reported in 1 P. (2d) 893.

gave notice of appeal. Shortly thereafter, Grace Pierson died, leaving Ryan to prosecute this appeal alone.

From the evidence the jury were warranted in finding the following facts: That for approximately seven years prior to and on March 3, 1930, appellant, an unmarried man, was the proprietor of the Jewel Hotel located at Spokane, Washington. This hotel contains some thirty-four or thirty-five rooms or apartments, is equipped for light housekeeping—the guests taking care of their own quarters. Appellant employed but one maid, Grace Pierson, who took care of the hallways, did odd jobs about the hotel, and cooked appellant's meals, sometimes in his apartment and sometimes in her apartment. For these services she received five dollars per week. She occupied apartment 9, and appellant occupied an apartment consisting of rooms 5 and 6. These two apartments were in close proximity to each other and readily accessible by either party. Catherine Carmody occupied room 22, located at the rear of the hotel. Carmody had lived at the hotel some nine or ten months prior to the night of the raid, during which time she was unemployed and frequently seen loitering about the lobby of the hotel.

During the latter part of February, 1930, Jack Haun and one Gilmore, undercover agents employed by the sheriff of Spokane county, went to the hotel for the purpose of determining whether the prohibition laws were being violated and, if so, to obtain evidence thereof. The latter rented room 7 from appellant.

On March 1, 1930, Haun and a young woman, whose identity is undisclosed by the evidence, while passing through the lobby of the hotel on their way to visit Gilmore, noticed one Joe Gulli, a guest of the hotel, who had occupied room 24 for some four or five years, playing at cards. Presently she called him to Gil-

more's room. Shortly thereafter, Gulli left the room, and returned within a few moments with a pint of whiskey which he had purchased from Carmody. In about fifteen or twenty minutes, Gilmore and his guests purchased another pint of whiskey from Carmody.

Frequently persons, other than guests, called at the hotel at night time and inquired for the appellant, and were then seen going into appellant's rooms, and presently would be seen accompanying Carmody to the rear of the hotel and in the direction of her room. Joe Gulli testified that he knew she was selling whiskey. She was seen delivering small packages to men near the office of the hotel and receiving money. Gilmore testified he had purchased a pint of liquor from Carmody on the night of March 3.

On the evening of March 3, deputy sheriff Walter, a Miss Smith, Haun, and Gilmore went to the latter's room, and soon thereafter Gilmore left the room and inquired of appellant whether he "could get a quart of whiskey." Ryan replied: "Go see Grace in room 9." Gilmore did so, and appellant nodded his head, indicating to her that it was all right to make the sale, and thereupon she sold him two pints of whiskey, which Gilmore took to his room. Within about fifteen minutes, Gilmore again called at apartment 9 and ordered more liquor from Pierson, at which time appellant was in her apartment, within hearing distance, eating supper. Presently Pierson delivered two pints of liquor at room 7, at which time she was placed under arrest. At this juncture, three deputy sheriffs, armed with a search warrant, searched room 9 and found a gallon jug partially filled with moonshine whiskey concealed in her trunk. The officers also found a whiskey glass on the table.

In addition to the foregoing, the jury were warranted in finding these additional facts: That Jack

Haun had been employed by the sheriff of Spokane county during the month of August, 1929, and that on or about the 10th or 12th of that month he purchased a pint of whiskey from appellant. On December 26, 1929, two police officers and two deputy sheriffs and an undercover agent drove to the vicinity of this hotel, parked their car, gave the agent two marked silver dollars, and, after having searched him, sent him to the hotel. Within about three or five minutes, he returned and handed the officers a pint of moonshine whiskey. The officers immediately went to the hotel, knocked at the door leading into room 9, which attracted the attention of appellant and Miss Pierson, who were engaged in hanging curtains in the hallway a short distance from this room. On seeing the officers the latter remarked: "Here is the party you want to see." Immediately appellant went to the door of room 9, and the officers informed him who they were and that they had a search warrant for that room, whereupon he opened the door, at which time one of the officers searched the appellant and found the two marked silver dollars in his pocket, and then the officers searched the room. Later, appellant stated to one of the officers: "I will give you one hundred dollars for the marked money and pint of whiskey."

Appellant first contends that the lower court erred in admitting the testimony of the witness Haun relating to the alleged sale of liquor by the appellant on the 10th or 12th of August, 1929, on the theory that this testimony, being uncorroborated, was unworthy of belief. It is sufficient to say that the jury were the sole judges of the credibility of this witness.

Nor was this testimony too remote in point of time under the previous holdings of this court. *State v. Galbraith*, 150 Wash. 664, 274 Pac. 797. Furthermore, the testimony was admissible as a circumstance tend-

ing to show that the hotel was being maintained as a place or joint where intoxicating liquors were kept and sold.

The second assignment of error relates to the introduction in evidence of exhibits 1 and 2, being the two pints of liquor delivered by Pierson to Gilmore's room on the night of March 3, and exhibit 3, being the jug of moonshine whiskey found shortly thereafter in her apartment at the time the officers made the search. Appellant maintains that the evidence fails to show any connection between himself and Grace Pierson. With this we cannot agree. Miss Pierson was in appellant's employ, cooking his meals, looking after the hallways, and doing odd jobs in and about the hotel. Furthermore, the evidence abundantly shows that the appellant not only had knowledge of the sales made by Pierson, but that he actually participated therein. When Gilmore inquired of appellant whether he could get a quart of whiskey, the latter directed him to Pierson's room and signaled to her, indicating that it was safe and proper to make the sale. Moreover, within about fifteen minutes Gilmore again went to room 9 and ordered more liquor, at which time appellant was within hearing distance eating his supper. Clearly, then, these exhibits were properly admitted in evidence.

The third assignment of error relates to the introduction in evidence of exhibits 4 and 5, being the pint of liquor delivered by the undercover agent to the officers and the marked money taken from the pocket of appellant on the night of December 26th. Following the arrest on the night of December 26, a charge was filed against the appellant in the justice court of Spokane county. While the cause was pending in that court, appellant moved to suppress as evidence the in-

toxicating liquor seized by the officers and the marked money taken from his person on that occasion, on the ground that the search and seizure were without a warrant, without probable cause, and in violation of his constitutional rights. This motion was denied by the justice of the peace. It appears that an appeal was taken from that court to the superior court for Spokane county. The motion to suppress was pending and undisposed of in the former case at the time of the trial of this cause in the court below. Appellant had made no motion to suppress that evidence in this case, the objection being raised for the first time when the marked money and the pint of liquor were offered in evidence during the trial.

Under these circumstances, the court was not required to interrupt the proceedings and try out a collateral issue as to whether the evidence had been lawfully obtained. The duty rested on appellant to bring before the court his motion to suppress the testimony. No duty rested upon the state in that regard.

"It is not the rule that the state must show as a condition precedent to the introduction in evidence of intoxicating liquor that it came into the possession of the liquor lawfully. This is an objection which the defendant must make, and when he makes it he must himself show that its possession was obtained by the state unlawfully." *State v. Ditmar*, 132 Wash. 501, 232 Pac. 321.

Furthermore, this evidence was relevant and material as bearing on the question whether appellant was maintaining a place for the unlawful sale of intoxicating liquor.

Nor do we find any merit to the contention that the search and seizure of the marked money was illegal. In the first place, the undercover agent to whom the officers had given the marked money returned from

the hotel within a few minutes with a pint of liquor. Moreover, at the time the two officers came in the hallway leading to room 9, Miss Pierson, on observing them, said: "Here is the party you want to see." Appellant then approached the officers, and they informed him that they were officers and that they had a search warrant for room 9, and he then opened the door leading into that room. It was at this time that one of the officers searched appellant and found the two marked silver dollars in his pocket. Appellant neither objected nor resisted the search being made, either of the room or of his person. Under all the attendant circumstances, the officers had probable cause to search appellant's person without a warrant.

"Officers making a search of premises under a search warrant may lawfully detain all persons found therein until the search is concluded. Any other rule would frustrate the purposes of the search; the officers would be compelled to stand idly by while the articles for which the search was instituted were carried away. The law is not so impotent as this. The officers may, under a warrant to search the premises, lawfully search any one found therein whom they have reasonable cause to believe has the articles for which the search is instituted upon his person." *Olympia v. Culp*, 136 Wash. 374, 240 Pac. 360.

Judgment affirmed.

TOLMAN, C. J., MILLARD, BEALS, and MITCHELL, JJ., concur.