No. 85-297

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

JAMES R. JOHNSON,

        Petitioner and Respondent,

   -vs-

DIVISION OF MOTOR VEHICLES,
MONTANA DEPARTMENT OF JUSTICE,

        Respondent and Appellant.

---

APPEAL FROM:  District Court of the Fourth Judicial District,
               In and for the County of Ravalli,
               The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Barbara Claassen, Asst. Atty. General, Helena
        Robert B. Brown, Ravalli County Attorney, Hamilton,
        Montana

    For Respondent:

        Jeffrey H. Langton, Hamilton, Montana

---

                Submitted on Briefs: Sept. 19, 1985

                      Decided: December 31, 1985

Filed: DEC 31 1985

*Ethel M. Harrison*
_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The State appeals a Ravalli County District Court order requiring the State to restore a driver's license seized under Montana's Implied Consent Law when the driver failed to submit to a breathalyzer test requested by a police officer. The issue on appeal is whether respondent James Johnson "cured" his failure to submit to the breathalyzer test by initiating a blood alcohol test a short time later. We hold that the later test did not cure respondent's prior failure to submit and, accordingly, we reverse.

The only evidence in the District Court file is the result of the blood alcohol test performed on respondent. We piece together the facts of this case from the District Court order and from counsels' unsworn statements in the transcript. As far as can be pieced together, the facts are these.

At approximately 1:00 a.m. on March 24, 1985, respondent was arrested for driving a motor vehicle while under the influence of alcohol. Deputy Sheriff Capp, the arresting officer, took the respondent to the Ravalli County Courthouse. Officer Capp informed respondent of the Miranda warnings and also of respondent's rights and duties under Montana's Implied Consent Law. Officer Capp requested that respondent take a breathalyzer test and respondent replied by asking if he could have an attorney present during the test. Officer Capp told respondent that he did not have that right. Officer Capp again read respondent his rights and duties under Montana's Implied Consent Law and respondent requested the presence of an attorney. Deputy Capp again stated that respondent had no right to an attorney for this test. Respondent's counsel concedes that respondent was requested a

third time to submit to the breathalyzer test. Respondent again asked about the possibility of having a lawyer present. Officer Capp finally deemed respondent's answers as a refusal to submit to the test. Respondent's driver's license was seized by the police under the Implied Consent Law because of his failure to submit to the breathalyzer test.

Respondent may not have expressly refused to submit to the sobriety test. Similarly, respondent may have been confused by the apparent conflict between the Miranda warnings, which cited his right to an attorney (during custodial interrogation), and the lack of a right to an attorney during the sobriety test.

Respondent was booked and jailed following his refusal to submit to the test. He asked the jailor that he be taken to the hospital for an examination because his wrists had apparently been bruised by police handcuffs. Once there, respondent asked that a doctor take a blood alcohol test but requested that the results not be made available to the police. Respondent contends that this blood test was taken approximately 20 minutes after respondent's failure to submit to the police breathalyzer test. The test was taken for respondent's personal use.

On March 28, 1985, respondent's attorney filed a petition for restoration of driver's license. On April 3, 1985, a hearing was had on the petition. No witnesses testified but both respondent's attorney and the County Attorney made statements to the court. Respondent's attorney, on behalf of respondent, offered the results of the blood alcohol test to the State for its prosecution of the DUI case against respondent. The results of the test showed that respondent's blood alcohol level was .20 when he was at the hospital, an undetermined time after his arrest. At the

3

hearing, respondent's counsel argued that respondent did not expressly refuse the breathalyzer test and that respondent may have been confused by the apparent conflict between the Miranda warnings and the lack of a right to an attorney during the test. Respondent contended that he substantially complied with the Implied Consent Law.

The District Court filed an order on April 3, 1985. The court found that respondent requested a blood alcohol test within a reasonable time after his prior implied refusal. The court ordered the restoration of respondent's license. The State appeals.

In this case, the trial judge sat without a jury, no testimony was taken, and the facts are relatively uncontested. In such a case, the scope of review is much broader than in other appeals and "this Court is free to make its own examination of the entire case and to make a determination in accordance with its findings." Shimsky v. Valley Credit Union (Mont. 1984), 676 P.2d 1308, 1310, 41 St.Rep. 258, 260, citing Steadman v. Halland (Mont. 1982), 641 P.2d 448, 39 St.Rep. 343.

At the time of the arrest, § 61-8-402, MCA, commonly called the Implied Consent Law, stated:

> (1) Any person who operates a motor vehicle upon ways of this state open to the public shall be deemed to have given consent, subject to the provisions of 61-8-401, to a chemical test of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood if arrested by a peace officer for driving or in actual physical control of a motor vehicle while under the influence of alcohol. The test shall be administered at the direction of a peace officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon ways of this state open to the public while under the influence of alcohol. The arresting officer may

4

> designate which one of the aforesaid
> tests shall be administered.
>
> . . .
>
> (3) If a resident driver under arrest
> refuses upon the request of a peace
> officer to submit to a chemical test
> designated by the arresting officer as
> provided in subsection (1) of this
> section, none shall be given, but the
> officer shall, on behalf of the division,
> immediately seize his driver's
> license . . .

This Court has interpreted § 61-8-402, MCA, in State v. Christopherson (Mont. 1985), 705 P.2d 121, 42 St.Rep. 1320, and Matter of Burnham (Mont. 1985), 705 P.2d 603, 42 St.Rep. 1342. The instant case is controlled by our holdings in Christopherson and Burnham, both of which were undecided when this case was in the District Court.

In Christopherson, the appellant was arrested for driving while under the influence of alcohol. He refused a police request to submit to a breath test and instead asked for and offered to pay for a blood alcohol test. We held that Christopherson's driver's license was properly suspended under § 61-8-402(3), MCA, for refusing to submit to a chemical blood alcohol test. In so holding, we stated:

> The purpose of Section 61-8-402, MCA, is
> to encourage a person arrested for DUI to
> submit to a chemical test. The statute
> provides that the arresting officer is to
> designate which type of chemical test
> will be administered. The arrested
> person may take the designated test or
> refuse it, but if he will not take the
> test designated by the officer, his
> driver's license shall be suspended. The
> language of the statute makes it clear
> that it is the refusal to take the test
> designated by the arresting officer that
> triggers the suspension, not the refusal
> to take any test whatsoever. If the
> arrested person chooses to take a
> chemical test other than the test
> designated by the arresting officer and
> will not take the designated test, it is
> still a refusal for which his driver's
> license will be suspended. (Emphasis in
> original.)

5

Christopherson, 42 St.Rep. at 1322. This language is directly applicable to the instant case.

In Burnham, we reversed the District Court's holding that,

> . . . Burnham's plea of guilty to the offense of driving under the influence of alcohol or drugs constituted a withdrawal of his refusal to take a breath test under Montana's implied consent statute.

Burnham, 705 P.2d at 606, 42 St.Rep. at 1345. With reference to § 61-8-402, MCA, we stated,

> There is nothing in this section, or any other section of the code, that allows a withdrawal of a refusal to submit to a chemical test.

Burnham, 705 P.2d at 608, 42 St.Rep. at 1347.

We find that Burnham and Christopherson are controlling and, therefore, we reverse the District Court. The District Court found, and we agree, that respondent's conduct constituted an implied refusal to take the breath test. Respondent repeatedly failed to submit to the test when asked to do so. Once a refusal to take the test is found, nothing in Montana law provides for a "cure" or withdrawal of that refusal. We hold that the police properly seized respondent's driver's license.

Respondent cites Moore v. State, Motor Vehicles Div., Etc. (Or. 1982), 652 P.2d 794, for the proposition that a driver's request to speak with an attorney before consenting to testing is not, in and of itself, a refusal to take the test. The Oregon decision is distinguishable, unpersuasive and predicated upon a right which does not exist in Montana. In Oregon, a person has a limited right to speak with an attorney before consenting to a breath test. Moore, 652 P.2d at 797. In Montana, a defendant has no right to speak with an attorney before a sobriety test or to have an attorney

6

present during a test. State v. Armfield (Mont. 1984), 693 P.2d 1226, 41 St.Rep. 2430. Furthermore, Deputy Capp three times asked respondent to take the test and three times respondent failed to do so. That is a refusal.

Respondent cites cases to the effect that where a defendant, because of confusion over the Miranda warnings, requests an attorney before consenting to the test, that request does not constitute a refusal to submit to testing. Citing State v. Welch (Vt. 1977), 376 A.2d 351; Rust v. Department of Motor Vehicles (1968), 73 Cal.Rptr. 366; Plumb v. Department of Motor Vehicles (1969), 81 Cal.Rptr. 639. Other courts have also addressed situations where defendants are confused by the Miranda warnings and the right, or lack thereof, to an attorney before a blood alcohol test. See Gaunt v. Motor Vehicle Div., Dept. of Transp. (Ariz. App. 1983), 666 P.2d 524; State, Department of Highways v. Beckey (Minn. 1971), 192 N.W.2d 441. With the exception of Welch, which is distinguishable from the instant case in any event, these cases require that the police clearly inform the defendant that he has no right to an attorney during a blood alcohol test. If this is done, the courts agree that the defendant's confusion about the Miranda warnings is no excuse for his refusal to submit to a blood alcohol test.

In the instant case, respondent's counsel admitted that the police informed respondent twice that he had no right to have an attorney present for the blood alcohol test. Furthermore, there is no evidence that respondent was confused by the apparent conflict between the Miranda warnings and the lack of a right to an attorney during a sobriety test. There is only counsel's bald assertion to that effect. Under these circumstances, respondent will not

7

be heard to argue that he was confused by his rights under Miranda.

Finally, respondent asserts that the State accepted the test results offered by respondent from the later sobriety test. Respondent argues that the State cannot now attack the District Court's order because the State acquiesced in the judgment by accepting the test results and because the State received a benefit from the judgment. We reject this argument without reaching the legal issue. The record shows that respondent's counsel voluntarily told the County Attorney the results of the test before the court ever entered its order. The record does not show that the State used the test results in its prosecution of the DUI case. Nor does the record show the resolution of the DUI case or that the State acquiesced in the District Court's order. The respondent's argument on this issue is without merit.

We agree with the reasoning of other courts which have addressed issues similar to the main issue here.

> There are several factors militating against the argument for additional time to allow a driver's subsequent offer to take the test. As time elapses between arrest and the test, the reliability and accuracy of the test diminishes . . . The time element may require involvement of an expert to extrapolate information derived from a delayed test . . . This tends to unnecessarily compound or complicate matters of evidence. Also, permitting a delayed test at the subsequent offer of the motorist would require officers to wait and see if there was a change of mind by the refusing motorist, and would require officers to forego other responsibilities in order to arrange the belated test -- all contrary to the clear intent behind the implied consent law that the test be submitted and completed expeditiously. (Citations omitted.)

Hoyle v. Peterson (Neb. 1984), 343 N.W.2d 730, 734. Similarly, the New Jersey court in State v. Corrado (N.J. App. 1982), 446 A.2d 1229, 1232, stated that:

> The cases expressing the majority view [that an initial refusal to take a sobriety test is final and there is no right to cure an initial refusal] essentially turn on the question of the unreasonableness of having police officers turn aside from other duties to administer a test after the driver has initially refused.

This reasoning is persuasive.

We reverse the District Court order and remand this case for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

9