No. 86-376

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

IN RE THE MATTER OF THE
SUSPENSION OF THE DRIVING
PRIVILEGES OF
CRAIG F. ORMAN.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph Gary, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hon. Mike Greely, Attorney General, Helena, Montana
A. Michael Salvagni, County Attorney, Bozeman, Montana
Duke R. Wolf, Deputy County Attorney, Bozeman, Montana

For Respondent:

Steven D. Nelson, Bozeman, Montana

Submitted on Briefs: Oct. 30, 1986

Decided: December 12, 1986

Filed: DEC 12 1986

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Craig Orman was arrested for driving under the influence of alcohol. At the time of his arrest he refused to submit to a breath test to determine the level of his intoxication. The Department of Justice suspended Mr. Orman's driver's license for one year because the breath test refusal was his second such refusal in Montana within the past five years. The District Court for the Eighteenth Judicial District, Gallatin County, granted Mr. Orman's petition to reinstate his driving privileges because the police officer involved may have unintentionally misled Mr. Orman regarding Montana's implied consent law. We affirm.

The issue in this case is whether the District Court erred in reinstating Mr. Orman's driving privileges.

In February 1986, Craig Orman, a Washington resident, was arrested by a Bozeman police officer for suspicion of driving while under the influence of alcohol and transported to the Gallatin County Detention Center (Center). Once at the Center, the police officer handed Mr. Orman a copy of the Montana implied consent law advisory form (form). While the police officer read the form to him, Mr. Orman, sitting across the table from the officer, read the same form. Mr. Orman then reread the form silently and said that he was not going to take the test. Apparently to clear up any confusion that might exist, the police officer then re-advised Mr. Orman that he would lose his driver's license for ninety days if he refused to take the test. All of the above proceedings at the Center were video-taped.

The police officer was aware that Mr. Orman had been previously arrested for a D.U.I. However, the officer was

2

not aware that Mr. Orman had previously refused to take a blood or breathalizer test. Because Mr. Orman's refusal in this case was his second such refusal in Montana within the last five years, the Motor Vehicle Division of the Department of Justice sent a one year license suspension letter to him in accordance with § 61-8-403, MCA.

The District Court reinstated Mr. Orman's driver's license stating:

> [D]ue to serious ramifications of a second refusal, the Court believes that the police should advise people that if any advise (sic) is given then it should include the second as well as the first refusal. The tape in this case showed that the statement of the officers indicated the license would only be suspended for ninety (90) days. This prohibited the Defendant from exercising intelligent judgment. For this reason, the Court reinstates driving privileges.

The Gallatin County Attorney's office appealed the decision on behalf of the Department of Justice, Motor Vehicle Division.

I

Did the District Court err in reinstating Mr. Orman's driving privileges?

Sections 61-8-401 to 408, MCA, are the principle statutes controlling the driving of a motor vehicle while under the influence of alcohol or drugs. Mr. Orman argues that his conduct did not rise to the level of a refusal to submit to the breathalizer test, and analogizes his conduct to the conduct of a person who consents to a search of his person or property, contending that a refusal should be found only where there was a knowing and voluntary refusal. This argument does not consider the nature of the motor vehicle statutes in question. Section 61-8-402, MCA, in substance provides that any person who operates a vehicle upon the

3

roads of this state shall be deemed to have given consent to a chemical test of his breath for the purpose of determining the alcoholic content of his blood if arrested by a police officer for driving under the influence of alcohol. The section further provides that a person is deemed not to have withdrawn the consent even though he is unconscious or is otherwise in a condition rendering him incapable of refusal. As an example, if a person is so grievously under the influence of alcohol that he is incapable of expressing his refusal to take the blood alcohol test or a breath test, the state still has the right under the statute to take such a test. We therefore conclude that the cases pertaining to the voluntariness of a consent search or the knowing commitment of an offense are not of assistance.

Section 61-8-403, MCA, controls the appeal from the suspension of a license to the district court and in part limits the issues to be considered by the court as follows:

> . . . the court shall take testimony and examine into the facts of the case, except that the issues shall be limited to whether a peace officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle upon ways of this state open to the public, while under the influence of alcohol, whether the person was placed under arrest, and whether such person refused to submit to the test. The court shall thereupon determine whether the petitioner is entitled to a license or is subject to suspension as heretofore provided.

The District Court correctly identified the key issue as whether Mr. Orman refused to submit to the breathalizer test.

We have reviewed the videotape prepared at the Center, which covers the police procedure with Mr. Orman. The officer carefully read the State of Montana implied consent law advisory form which covers the essential elements of § 61-8-402, MCA, and which specifically provides as follows

4

with regard to the suspension of the license and driving privilege:

> 3. You are advised that:
> . . .
> (b) Upon receipt of the sworn statement, the Motor Vehicle Division shall suspend your driver's license and driving privilege for 90 days upon a first refusal; or shall revoke your license and driving privilege for one (1) year upon a second or subsequent refusal within a five (5) year period. In either case, no provisional or probationary license may be issued.

The tape shows that the officer carefully read that provision to Mr. Orman. In addition, the tape shows that Mr. Orman reread the form to himself over the course of several minutes. After completing that rereading, Mr. Orman stated that he was not going to take the breathalizer test. Up to that point the procedure taken by the police officer was meticulously careful and complete and would clearly afford a basis to conclude that Mr. Orman's license should be revoked for one year upon his second refusal to take the breathalizer test within the previous five years. However, there were additional statements made which caused the District Court to reach a different conclusion.

The tape demonstrates the possibility that Mr. Orman may have been slightly confused at the time he refused to take the breathalizer test. In substance the officer next advised Mr. Orman that he would have to charge him with driving under the influence and that his license would be suspended for ninety days. Next, after giving the Miranda warning, the officer asked Mr. Orman a number of questions. Mr. Orman specifically stated that he thought he was under the influence of alcohol. The tape further demonstrates that the police officer ran Mr. Orman through the same tests at the

5

Center as were given at the time of initial arrest. The tests confirm the conclusion of Mr. Orman that he appeared to be under the influence of alcohol. In the course of this questioning and testing, the officer indicated several more times that he was required to charge Mr. Orman with driving under the influence and that his license would be suspended for ninety days. We do emphasize that there was no intent on the part of the officer to mislead Mr. Orman. The officer did not know that Mr. Orman had previously refused a breathalizer test within the past five years. A review of the evidence clearly demonstrates that even a person not under the influence of alcohol would reasonably have concluded that his license was going to be suspended for only ninety days. We do not find it reasonable to separate this knowledge from the initial statement by Mr. Orman that he would not submit to the breathalizer test. While we do not choose to set forth any rule controlling the information to be given by an officer at the time of such an arrest, we conclude in this specific set of circumstances, that Mr. Orman's refusal to submit to the breathalizer test contained a condition of a ninety day driver's license suspension.

We affirm the order of the District Court reinstating Mr. Orman's driving privileges, noting that the record demonstrates that his driving privileges had been suspended for more than ninety days prior to the reinstatement by the District Court.

_____
Justice

We Concur:

_____
Chief Justice

John C. Shelley

R. C. Brandson

Justices

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 86-376

IN RE THE MATTER OF THE SUSPENSION  )
OF THE DRIVING PRIVILEGES OF        )        O R D E R
CRIAG F. ORMAN                      )

The State petitioned this Court for a rehearing or a clarification of this matter. After due consideration of the arguments made, we conclude that our opinion dated December 12, 1986, contains a sentence which is unnecessary and thus the opinion should be amended by striking the entire first sentence of the last paragraph on page 5 of the slip opinion. The sentence to be elininated from the opinion is the one which states: "The tape demonstrates the possibility that Mr. Orman may have been slightly confused at the time he refused to take the breathalizer test." Thus, page 5 of the slip opinion shall read:



FILED

FEB 19 1987

Ethel M. Harrison
CLERK OF SUPREME COURT
STATE OF MONTANA

with regard to the suspension of the license and driving privilege:

> 3. You are advised that:
>     . . .
>> (b) Upon receipt of the sworn statement, the Motor Vehicle Division shall suspend your driver's license and driving privilege for 90 days upon a first refusal; or shall revoke your license and driving privilege for one (1) year upon a second or subsequent refusal within a five (5) year period. In either case, no provisional or probationary license may be issued.

The tape shows that the officer carefully read that provision to Mr. Orman. In addition, the tape shows that Mr. Orman reread the form to himself over the course of several minutes. After completing that rereading, Mr. Orman stated that he was not going to take the breathalizer test. Up to that point the procedure taken by the police officer was meticulously careful and complete and would clearly afford a basis to conclude that Mr. Orman's license should be revoked for one year upon his second refusal to take the breathalizer test within the previous five years. However, there were additional statements made which caused the District Court to reach a different conclusion.

In substance the officer next advised Mr. Orman that he would have to charge him with driving under the influence and that his license would be suspended for ninety days. Next, after giving the Miranda warning, the officer asked Mr. Orman a number of questions. Mr. Orman specifically stated that he thought he was under the influence of alcohol. The tape further demonstrates that the police officer ran Mr. Orman through the same tests at the

In all other respects the petition for rehearing or clarification is denied.

DATED this _____ day of February, 1987.

_____
Chief Justice

_____

_____

_____

_____

_____

_____
Justices