No. 87-246

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

TOMMY LEROY WALKER,

       Plaintiff and Respondent,

-vs-

STATE OF MONTANA,

       Defendant and Appellant.

---

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Barbara Claassen, Asst. Atty. General, Helena
        Patrick L. Paul, County Attorney, Great Falls, Montana
        Jeff McAllister, Deputy County Atty., Great Falls

    For Respondent:

        Ralph Randono; Randono, Donovan & Macek, Great Falls,
        Montana

---

Submitted on Briefs: Sept. 17, 1987

Decided: December 3, 1987

Filed: DEC 3 - 1987

Ethel M. Harrison

---
Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Appellant, the State of Montana, challenges the decision of the District Court of the Eighth Judicial District. We reverse and remand for proceedings consistent with this opinion.

On December 16, 1986, Respondent Walker twice refused police testing to determine blood alcohol content. Both refusals occurred following arrests by Great Falls Police Officer Chris Hickman. After the first arrest, Walker posted bond and returned to his car where Hickman arrested him for the second time. The issue on appeal concerns the adequacy of the State's notice on the consequences incident to refusing police testing where a valid arrest for DUI occurs.

Before both refusals, Hickman read aloud to Walker the following advisory consent form:

STATE OF MONTANA
IMPLIED CONSENT LAW
Advisory Form

Montana Law states, in part,
61-8-402 - <u>Chemical blood, breath, or urine tests.</u> (1) Any person who operates a motor vehicle upon the ways of this state open to the public shall be deemed to have given his consent, subject to the provisions of 61-8-401, to a chemical test of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood if arrested by a peace officer for driving or in actual physical control of a motor vehicle while under the influence of alcohol.

1. You are advised that:
   (a) You are under arrest for driving or being in actual physical control of a motor vehicle while under the influence of alcohol;
   (b) The results of the chemical test may be used in evidence against you in any criminal proceedings resulting from this arrest.

2. You are advised that:

2

(a) If you refuse to submit to a chemical test as requested by the arresting officer, none shall be given;

(b) If you refuse the test, the arresting officer shall immediately seize your Montana driver's license on behalf of the Motor Vehicle Division;

(c) If your driver's license was valid and in full force and effect at the time of your arrest, the arresting officer shall issue a 72-hour driving permit.

3. You are advised that:

(a) If you have refused the chemical test, the arresting officer shall forward to the Motor Vehicle Division a sworn statement that you refused.

(b) Upon receipt of the sworn statement, the Motor Vehicle Division shall suspend your driver's license and driving privilege for 90 days upon a first refusal; or shall revoke your license and driving privilege for one (1) year upon a second or subsequent refusal within a five (5) year period. In either case, no provisional or probationary license may be issued.

4. You are advised that, in addition to any test administered at the direction of a peace officer, you may, at your own expense, have a physician or registered nurse of your own choosing administer a test for determining the amount of alcohol in your blood.

5. At your request, full information concerning the test requested shall be made available to you or your attorney.

After reading the form to Walker after each arrest, Officer Hickman asked Walker if he understood the form. Walker responded each time that he understood, and refused both of the tests to be administered by the police. Walker made no inquiry concerning the availability of an independent test.

Walker petitioned for reinstatement of his license. At the hearing held pursuant to the reinstatement request,

3

Walker's counsel stated that the form misled Walker into believing that if he refused to take the test administered by the police, he forfeited his right to an independent test. The District Court found the form misleading because the phrase, "<u>none</u> shall be given," (emphasis added), in paragraph 2(a), and the phrase, "in <u>addition</u> to any test administered by the police officer," (emphasis added), in paragraph 4, seem to require that the police test precede any independent test. The lower court then ruled that State v. Swanson (Mont. 1986), 722 P.2d 1155, 43 St.Rep. 1329, controlled as a matter of law and reinstated Walker's license. On appeal, the State points out that Walker unequivocally refused the tests, and that Walker told Officer Hickman that he understood the form.

Swanson mandates that the State refrain from frustrating the criminally accused's right to an independent blood test pursuant to § 61-8-405(2), MCA, for exculpatory evidence in a criminal DUI prosecution. Swanson, 722 P.2d at 1158. This Court also made it clear in Swanson that the criminally accused DUI defendant had the right to an independent blood test whether or not the accused agreed to submit to police BAC testing. Swanson, 722 P.2d at 1157. However, the current case concerns the application of § 61-8-402, MCA, which provides a civil penalty for refusing to take the blood test offered by the arresting police officer. The rule from Swanson does not control interpretation of this statute, and the District Court incorrectly applied Swanson. See State ex. rel. Majerus v. Carter (Mont. 1984), 693 P.2d 501, 504, 41 St.Rep. 2468, 2470. This is true because the "revocation of a driver's license is a civil sanction, not a criminal penalty." In the Matter of the Petition of Burnham (Mont. 1985), 705 P.2d 603, 607, 42 St.Rep. 1342, 1346. And Walker's "refusal to submit to a chemical test is an issue

4

separate and distinct from whether or not he was guilty of DUI." Burnham, 705 P.2d at 608.

Although Swanson's criminal due process guarantees do not apply to license suspension under § 61-8-402, MCA, the State must still show that the defendant refused police testing in order to revoke the defendant's driver's license. Blake v. State (Mont. 1987), 735 P.2d 262, 263, 44 St.Rep. 580, 581. And failure to properly inform the defendant of the consequences of refusing to take the test may invalidate the penalty. In re the Matter of Orman (Mont. 1986), 731 P.2d 893, 895, 43 St.Rep. 2228, 2231. In the current case, Walker argues that Orman supports the lower court's license reinstatement.

In Orman, the defendant refused to take the police test for the second time within five years. A second refusal within five years results in the loss of the license for one year. The arresting officer in Orman did not know that the defendant had refused the test before, and told the defendant that refusal would result in only a ninety day suspension. Despite the mistake, the State took the license for one year. The District Court ordered that the license be returned to the defendant, and we affirmed holding that:

> While we do not choose to set forth any rule controlling the information to be given by an officer at the time of such an arrest, we conclude in this specific set of circumstances, that Mr. Orman's refusal to submit to the breathalizer test contained a condition of a ninety day driver's license suspension.

Orman, 731 P.2d at 895.

The facts in the current case distinguish it from Orman. In Orman, the arresting officer unintentionally but affirmatively misled the defendant into believing that his

5

refusal carried a lesser penalty than the penalty that the State actually imposed. In the current case, the arresting officer read a form which contains language from § 61-8-405, MCA, and § 61-8-402, MCA. Although, as the District Court found, the mixing of the language from these two statutes could lead an individual to miscontrue the penalties incident to refusing the test, the form does not affirmatively mislead, and Walker voiced no confusion.

Furthermore, unlike the information given in Orman, the form did not induce Walker to believe that the penalty for refusing the test was less than what the State imposed. Rather, Walker claimed that he believed the penalties for refusing the test were greater than they actually were, i.e., Walker claimed he thought he forfeited not only his license, but also his right to independent testing. In regard to the license, however, Walker got what he bargained for; by refusing the testing, he lost his license. Any confusion from the form over Walker's right to independent testing does not excuse Walker's refusal to be tested, and neither Swanson nor Orman control.

This case warrants application of Johnson v. Division of Motor Vehicles (Mont. 1985), 711 P.2d 815, 42 St.Rep. 2045. In Johnson, the defendant claimed that confusion over his Miranda rights invalidated the suspension of his license. In response we stated that:

> there is no evidence that respondent was confused by the apparent conflict between the Miranda warnings and the lack of a right to an attorney during a sobriety test. There is only counsel's bald assertion to that effect. Under these circumstances, respondent will not be heard to argue that he was confused by his rights under Miranda. (Emphasis in original.)

6

Johnson, 711 P.2d at 818.  As in <u>Johnson</u>, the scope of review here is broad, and we are free to make our own findings. <u>Johnson</u>, 711 P.2d at 816.  Following both arrests, Walker unequivocally stated that he understood the consequences of refusing the tests.  After the first refusal, he returned to his car and drove from the scene.  Walker's conduct prevented the State from ascertaining through testing whether or not alcohol impaired his driving.  Under these circumstances, as in <u>Johnson</u>, the bald assertion long after the arrest that confusion prevented an effective refusal fails to overcome the suspension mandated by the implied consent statute.  We reverse and remand for proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

7