# MICHAEL ADAIR ELLENBURG,
## Petitioner and Appellant,

### v.

# MONTANA DEPARTMENT OF JUSTICE,
## Respondent and Respondent.

No. 96-158.
Submitted on Briefs November 21, 1996.
Decided December 17, 1996.
53 St.Rep. 1398.
280 Mont. 268.
929 P.2d 861.

See C.J.S. Motor Vehicles § 164.16.

For Appellant: **Terry G. Sehestedt**, Missoula.

For Respondent: **Honorable Joseph P. Mazurek**, Attorney General; **Micheal Wellenstein**, Assistant Attorney General, Helena; **Gary L. Henricks**, Deputy City Attorney, Missoula.

CHIEF JUSTICE TURNAGE delivered the Opinion of the Court.

Michael Ellenburg appeals the decision of the Fourth Judicial District Court, Missoula County, upholding the revocation of his Montana driver's license pursuant to § 61-8-402, MCA. We affirm.

The sole issue presented on appeal is whether the District Court erred in finding that Ellenburg refused to take a breathalizer test following his arrest for driving under the influence of alcohol.

On December 30, 1995, Ellenburg was stopped by Missoula City Police Officer Mark Muir for driving under the influence. Following his arrest, Ellenburg was transported to the Missoula City Police Station for processing. There, officers attempted to initiate the DUI booking process. However, Ellenburg was so uncooperative that he was placed in a holding cell to cool off. Ten minutes later he was again taken to the booking room where officers completed the DUI processing.

Officer Muir read Ellenburg an implied consent advisory form, informing him, in relevant part:

You may go to the hospital or a laboratory and have a blood test taken whether or not you take the tests that I offer. That test would be at your own expense and you may use that test for any purpose you choose.

....

The breath test that I am offering you requires you to blow a proper sample of air into this instrument right here. It will analyze your breath sample for alcohol concentration. Will you take a breath test for me Michael?

Ellenburg responded that he would like to take a blood test. Officer Muir explained, "I would be happy to take you to the hospital to take a blood test but will you take the breath test that I'm offering you?" Ellenburg answered that he wanted a blood test. Officer Muir explained that he needed a yes or no answer to his question and that the breath test was the only one he was offering. Ellenburg declined to take the breath test.

Officer Muir transported Ellenburg to St. Patrick Hospital and requested hospital personnel to give him a blood test. Ellenburg was required to sign two forms before his blood could be drawn. When Officer Muir presented Ellenburg with the forms, he refused to sign them, and as a result, his blood was not drawn.

Subsequently, the Department of Justice notified Ellenburg that his Montana driving privileges had been revoked because he had refused to submit to a chemical test prescribed by § 61-8-402, MCA. Ellenburg petitioned the District Court pursuant to § 61-8-403, MCA, to review the revocation, which it affirmed. Ellenburg appeals.

Did the District Court err in finding that Ellenburg refused to take a breathalizer test following his arrest for driving under the influence of alcohol?

We review a district court's denial of a petition for reinstatement of a driver's license to determine whether the court's findings of fact are clearly erroneous and its conclusions of law are correct. *Bauer v. State* (1996), 275 Mont. 119, 122, 910 P.2d 886, 888.

Pursuant to § 61-8-403(4), MCA, the District Court's review of Ellenburg's petition for reinstatement of his driver's license was limited to one issue: whether Ellenburg refused to submit to a chemical test as required by § 61-8-402, MCA. Ellenburg argues that he never refused to submit to such a test.

At the reinstatement hearing, Ellenburg argued that he did not refuse to comply with the implied consent statute as explained by Officer Muir. Ellenburg suggested that he was misinformed of the consequences of not taking the breath test, because before and after offering the breath test, Officer Muir told him that he could have a blood test and use it for "any purpose." Ellenburg claims that he believed the blood test would satisfy the implied consent statute, despite his refusal to comply with Officer Muir's request to take a breath test.

Ellenburg argues that the District Court's conclusion that the arresting officer properly informed him of his options and the consequences under the implied consent statute were incorrect. He cites *Matter of Orman* (1986), 224 Mont. 332, 731 P.2d 893, in support of his theory that, because Officer Muir misinformed him of his options and the consequences under the implied consent law, he was entitled to a reinstatement of his driver's license.

We have reviewed the videotape of Ellenburg's booking. Officer Muir clearly explained to Ellenburg that he was offering the breath test as the designated test under the implied consent statute. When

Officer Muir stated, "That [blood] test would be at your own expense and you may use that test for any purpose you choose," he was informing Ellenburg of his rights under § 61-8-405(2), MCA, which allows a person to obtain his own test to determine blood alcohol in addition to the test offered by the peace officer.

Ellenburg's reliance on *Orman* is misplaced. Orman was arrested for driving under the influence and was read the implied consent advisory form. Orman refused to take the offered test. *Orman*, 731 P.2d at 893. The arresting officer advised Orman that his refusal would result in a ninety-day license suspension. However, the officer was unaware that Orman had refused a similar test during the past five years, which under § 61-8-402(5)(b), MCA, would result in a one-year suspension. At a reinstatement hearing, the court concluded that Orman had been unintentionally misinformed and reinstated his driver's license. *Orman*, 731 P.2d at 894. We affirmed, concluding "in this specific set of circumstances, that Mr. Orman's refusal to submit to the breathalizer test contained a condition of a ninety day driver's license suspension." *Orman*, 731 P.2d at 895.

Unlike in *Orman*, Officer Muir did not misinform Ellenburg of the consequences of failing to submit to the offered chemical test. Moreover, Orman never claimed that he refused to take the offered breathalizer test. We reject Ellenburg's attempt to extend the limited holding in *Orman*.

At the reinstatement hearing, the District Court viewed the videotape of the DUI booking and found that Officer Muir had read Ellenburg the implied consent statute which informed him of the consequences of failing to take the breathalizer test. Ellenburg was read the implied consent statute and refused to take the offered breathalizer test. The District Court properly concluded that Ellenburg refused to submit to a chemical test as required by § 61-8-402, MCA.

Ellenburg further argues that the fact that blood testing was not performed is of no consequence to his refusal to consent. According to Ellenburg, although Officer Muir asked him to sign two authorization forms at the hospital, nothing in § 61-8-402, MCA, required him to sign anything. Ellenburg also suggests that Officer Muir never asked him to submit to a blood test. Therefore, he asserts, there was no refusal under § 61-8-402, MCA.

This argument misstates the record. During Ellenburg's booking, Officer Muir offered Ellenburg a breathalizer test, which he refused. When Ellenburg was transported to the hospital for the blood test, he refused to sign the authorization forms. As a result, the blood test

was not administered. Officer Muir was not required to request a blood test from Ellenburg because Ellenburg had already refused the offered breathalizer test.

The District Court's findings are not clearly erroneous and its conclusions of law are correct. Ellenburg's petition for reinstatement of his driver's license was properly denied. We affirm the District Court's denial of Ellenburg's petition for reinstatement of his driver's license.

JUSTICES HUNT, TRIEWEILER, GRAY and LEAPHART concur.