No. 98-552

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 335N

JAN RAY SWANSON,

Petitioner and Appellant,

v.

STATE OF MONTANA,

Respondent and Respondent.

STATE LAW LIBRARY

DEC 1 4 2000

OF MONTANA

APPEAL FROM:    District Court of the Seventeenth Judicial District,
                In and for the County of Blaine,
                The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Gary R. Thomas, Thomas Law Office, P.C., Red Lodge, Montana

        For Respondent:

                Hon. Joseph P. Mazurek, Attorney General; Brenda Nordlund,
                Assistant Attorney General; Helena, Montana

                Mark Harshman, Blaine County Attorney; Yvonne Laird, Deputy
                County Attorney, Chinook, Montana

                                        Submitted on Briefs:  May 25, 2000

                                        Decided:  December 14, 2000

Filed:

_____
                    Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Appellant, Jan Ray Swanson, a driver licensed in the state of Wyoming, appeals from a district court order denying his petition to reinstate his Montana driving privileges.

¶3 Swanson argues that his due process rights were violated when his privilege to drive in Montana was suspended and his Wyoming driver's license was seized because he refused to submit to a breath test after his arrest for Driving Under the Influence of Alcohol. Swanson does not challenge the basis for the initial investigation or arrest, nor is the fact of arrest or testing refusal at issue. We affirm the District Court's ruling, and find no due process violation.

¶4 Swanson raises the following issues:

¶5 1. Did the District Court err in finding the information given to Swanson by a law enforcement official relating to the potential penalties for refusal to take a breath test was adequate to protect his due process rights?

¶6 2. Did the District Court err in finding the seizure and subsequent mailing to the home state of a nonresident's driver's license was lawful?

2

## BACKGROUND

¶7    On January 31, 1998, at approximately 2:30 a.m., Montana Highway Patrolman Steve Baiamonte approached a pickup truck stopped just off U.S. Highway 2, on a turnout in Blaine County. The lights were on and the engine was running. On approaching the vehicle, Officer Baiamonte found Petitioner, Jan Ray Swanson asleep in the driver's seat of his pickup. Officer Baiamonte opened the door to shut off the engine, and smelled the odor of alcohol. After shutting off the engine, Officer Baiamonte awakened Swanson, who stated he had pulled over to sleep. Swanson appeared disoriented, and Officer Baiamonte observed an open six pack of beer in the pickup. Officer Baiamonte then told Swanson to step out of the vehicle and informed him that he was under arrest for driving under the influence of alcohol (DUI).

¶8    Officer Baiamonte asked Swanson for his driver's license, registration, and proof of insurance. He did not receive Swanson's driver's license at that time. Officer Baiamonte arrested Swanson and transported him to the Blaine County Sheriff's Office. Swanson was subsequently processed for the DUI charge.

¶9    During processing, Officer Baiamonte read the Montana Department of Justice Implied Consent Advisory to Swanson. Among other things, the advisory form states that refusal to submit to a breath or blood test will result in the seizure and suspension of one's driver's license for six months. It further provides that refusal to submit to similar testing within the past five years, followed by another refusal, will result in seizure of the license and

3

revocation for one year. Officer Baiamonte then requested a breath sample, and Swanson refused. Baiamonte seized Swanson's driver's license. Baiamonte provided Swanson with a "Notice of Suspension or Revocation" stating, among other things, that a nonresident's driving privileges will be suspended or revoked in the same manner as a resident's, and that the seized license is sent to the out-of-state driver's home state with a copy of the report of refusal. Officer Baiamonte subsequently sent Swanson's Wyoming driver's license to the Montana Department of Justice with a copy of the refusal.

¶10    Swanson filed a petition in the Seventeenth Judicial District Court, Blaine County, for return of his Wyoming driver's license and Montana driving privileges. A hearing was held on July 28, 1998. The District Court issued its Findings of Facts, Conclusions of Law, and Order on August 28, 1998, denying Swanson's petition for reinstatement of his Montana driving privileges.

¶11    The District Court concluded that Montana had the authority to suspend Swanson's nonresident driving privileges within Montana, and the authority to seize Swanson's Wyoming driver's license. Swanson appeals.

### ISSUE ONE

¶12    Did the District Court err in finding the information given to Swanson by a law enforcement official relating to the potential penalties for refusal to take a breath test was adequate to protect his due process rights?

4

¶13 Swanson claims that the implied consent advisory is erroneous and misleading because it fails to distinguish between the suspension of a Montana-issued driver's license and the suspension of a nonresident's driving privileges in Montana, thus violating his right to due process. Specifically, Swanson asserts that he possessed a valid Wyoming driver's license at the time of his arrest and, therefore, the information provided to him on the advisory form, that if he refused the test, his driver's license would be "seized and suspended for six months" and if this was his second refusal within five years, his driver's license "will be seized and revoked for one year" was erroneous. In fact, Wyoming's suspension penalties are different than Montana's, and thus he argues that he was misled by the information provided. He also points out that although Montana may suspend or revoke his privilege to drive in Montana, it has no authority to suspend or revoke his Wyoming driver's license and that only the State of Wyoming can do so. Therefore, he claims, any references in the advisory form to Montana's ability to suspend or revoke his Wyoming driver's license is false and misleading. Swanson urges that nonresidents should simply be told that their *driving privileges in Montana* will be suspended or revoked if they refuse the test.

¶14 The State argues that the advisement given to Swanson, though not specific as to the effects of refusal on out-of-state drivers, was not misleading and sufficiently informed Swanson of the actions taken if he refused the breath test.

¶15 We review a district court's denial of a petition for reinstatement of a driver's license to determine whether the court's findings of fact are clearly erroneous and its conclusions of

5

law are correct. *Ellenburg v. Montana Dep't of Justice* (1996), 280 Mont. 268, 270, 929 P.2d 861, 863; *Bauer v. State* (1996), 275 Mont. 119, 122, 910 P.2d 886, 888. Whether a person's due process rights have been violated is a question of law. *State v. Strand* (1997), 286 Mont. 122, 124, 951 P.2d 552, 553.

¶16 Pursuant to Montana's statutory licensing procedures, it is illegal to be in actual or physical control of a vehicle on the highways of Montana while under the influence of alcohol. Under Montana's "Implied Consent" statute, any person driving on a public highway in Montana is deemed to have consented to submit to a blood or breath test administered at the direction of a peace officer. Sections 61-8-401 and -402, MCA. If a driver refuses to submit to a breath or blood test at the request of a peace officer, the State has the authority to suspend or revoke a Montana driver's license or Montana driving privileges. Sections 61-5-203, 61-8-401 and -402, MCA.

¶17 The "Implied Consent" statute does not specifically require an officer to provide information to an arrested motorist as to the ramifications of refusal to take the requested test. Sections 61-8-402, -404, and -405, MCA. In fact, a driver is not entitled to be informed that he or she may refuse the test. *State v. Purdie* (1984), 209 Mont. 352, 356, 680 P.2d 576, 579, *overruled on other grounds by Hulse v. State, Dep't of Justice, Motor Vehicle Div.*, 1998 MT 108, 289 Mont. 1, 961 P.2d 75. Yet, we have previously held that improperly informing a driver of the consequences of refusing to take the test may invalidate the suspension of a

6

driver's license. *In re Matter of Orman* (1986), 224 Mont. 332, 335, 731 P.2d 893, 895; *see also Walker v. State* (1987), 229 Mont. 331, 335, 746 P.2d 624, 626.

¶18 This Court has not yet addressed exactly what information must be given to a motorist before being asked to submit to a breath test. We decline to make such a determination today. But, in the case at hand, the advisory form was not erroneous nor did it affirmatively mislead Swanson. The purpose of the advisory is to inform an apparently intoxicated driver of the potentially serious consequences of refusal to submit to a breath/blood test, and to inform the driver of his due process protections such as independent testing and availability of posttesting hearings. An implied consent advisory cannot inform every driver what the "correct choice" may be in a certain situation. It merely informs the driver, in as clear a manner as possible, of the potential dangers of each choice.

¶19 Officer Baiamonte informed Swanson, among other things, that if he refused the test, his driver's license would be seized and suspended for six months, and if this was his second refusal within five years, his driver's license would be seized and revoked for one year. In addition, Officer Baiamonte, as required under law, gave Swanson written notice of the suspension or revocation and methods to appeal the action. Section 61-8-402(5), MCA. This postadvisory notice, which was given to Swanson after he was arrested and his driver's license was seized, specifies that a nonresident's driving privileges will be suspended or revoked in the same manner as those of resident drivers, and that his license would be mailed

7

to his home state with a copy of the report of refusal. The notice also provided information on the availability of a hearing in the district court.

¶20 The precise question raised in this appeal is whether Swanson's due process rights were violated because he was informed that his driver's license, not his nonresident driving privileges, would be affected if he refused to take the test. The District Court held that Swanson was provided sufficiently accurate information as to the ramifications of a refusal to submit to testing. We agree.

¶21 Swanson was told that his "driver's license" would be seized and suspended for six months if he refused the test. Section 61-1-136(3), MCA, provides that "driver's license" is broadly defined to include "any nonresident's driving privilege." When § 61-8-402(4), MCA, directs the Department to "suspend the license" upon receipt of a report of a testing refusal, the phrase "suspend the license" necessarily includes the suspension of "any nonresident's driving privilege." Thus the notice alerted Swanson of how refusal affected his driving privileges in Montana. When Swanson refused the test and his license was seized, he was given notice of the suspension or revocation and the right to appeal the action pursuant to § 61-8-402(5), MCA. This notice stated that "[a] nonresident's driving privileges will be suspended or revoked in the same manner [as a resident's driving privileges], plus the seized license is sent to the home state with a copy of this report." As the District Court noted, overstating the consequences that could occur in Montana for failure to submit to the breath test was unlikely to coerce Swanson into refusing to submit to the test. Swanson did

8

not take the test. Therefore, this is not a situation where a motorist was induced into taking the test after being provided inaccurate information by a peace officer.

¶22 The state also correctly points out that the Wyoming implied consent law has no bearing on this case as is ultimately conceded by Swanson. Wyoming's implied consent law is only invoked when a "person . . . drives or is in actual physical control of a motor vehicle upon a public street or highway *in this state*." Wyo. Stat. Ann. § 31-6-102(a)(1). In addition, Montana cannot, nor should it attempt to, be responsible for informing a driver of the potential adverse actions that another state may commence upon discovery of a refusal to submit to testing. As such, we do not address the effects of our actions upon Swanson's rights under Wyoming law. Such rights must be determined by our sister courts in other states.

## ISSUE TWO

¶23 Did the District Court err in finding the seizure and subsequent mailing to the home state of a nonresident's driver's license was lawful?

¶24 Swanson argues that it is unlawful for an agent of the State of Montana to seize his Wyoming driver's license for refusing to submit to a breath test. The State responds that Montana statutes authorize the State to suspend or revoke nonresident driving privileges and seize nonresident drivers' licenses.

¶25 Again, we review a district court's denial of a petition for reinstatement of a driver's license to determine whether the court's findings of fact are clearly erroneous and its

9

conclusions of law are correct. *Ellenburg,* 280 Mont. at 270, 929 P.2d at 863; *Bauer,* 275 Mont. at 122, 910 P.2d at 888.

¶26    The State's interest in depriving an intoxicated driver of permission to operate a vehicle is particularly strong. By statute, any person who operates or is in actual physical control of a vehicle on Montana roads is considered to have given consent to blood or breath testing to determine any alcohol or drugs in the person's body. Section 61-8-402(1), MCA. A person may refuse the test, but doing so results in a seizure of the person's driver's license by a peace officer who sends it to the Montana Department of Justice. Section 61-8-402(4), MCA. Upon receipt of a resident's driver's license, the Department suspends or revokes the driver's license for a statutorily mandated period of time. Section 61-8-402(4), MCA. For nonresidents, Montana sends the nonresident's driver's license to the issuing state, along with a report of the nonresident's refusal to take a breath test. Section 61-8-402(7), MCA.

¶27    We have consistently recognized the power of the State to regulate the licensing of drivers in the interests of public safety. *See State v. Deitchler* (1982), 201 Mont. 70, 72, 651 P.2d 1020, 1022; *see also Mackey v. Montrym* (1979), 443 U.S. 1, 99 S. Ct. 2612, 61 L. Ed. 2d 321; *Dixon v. Love* (1977), 431 U.S. 105, 97 S. Ct. 1723, 52 L. Ed. 2d 172; *Bell v. Burson* (1971), 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90. We have also recognized that the government possesses the police power to enact reasonable legislation, even though the regulation may frequently be an infringement of individual rights. *Dietchler,* 201 Mont. at 72, 651 P.2d at 1021. The general rule that all legislative enactments are presumed valid and

10

the burden of proving their invalidity is on the plaintiff is equally applicable in cases where the legislation at issue is an exercise of police power. *McElwain v. County of Flathead* (1991), 248 Mont. 231, 236, 811 P.2d 1267, 1271. Thus, the burden is on Swanson to demonstrate the invalidity of the seizure requirement in the "Implied Consent" statute.

¶28 As we have previously held, once a driver's license has been issued, the licensee has an important interest in retaining it. Therefore, a license cannot be suspended or revoked without the procedural due process guaranteed by the Fourteenth Amendment. *Seyferth v. State, Dep't of Justice, Motor Vehicle Div.* (1996), 277 Mont. 377, 381, 922 P.2d 484, 496-97. *See also State ex rel. Majerus v. Carter* (1984), 214 Mont. 272, 276, 693 P.2d 501, 503 (quoting *Bell*, 402 U.S. at 539 , 91 S. Ct. at 1589). What due process safeguards may be necessary in a civil case are less than those required in a criminal case. *Majerus*, 214 Mont. at 276, 693 P.2d at 504. Thus, we employ a traditional due process balancing test to protect against a potentially erroneous deprivation of a protectable property interest. This test requires consideration of the nature and weight of the private interest affected by the official action, the risk of an erroneous deprivation as a consequence of the summary procedure used and the probable value, if any, of additional or substitute procedural safeguards, and the governmental interest, including the function involved, as well as any fiscal and administrative burdens that might result from a substitute procedure sought. *See Mackey*, 443 U.S. at 11; *see also Matthews v. Eldridge* (1976), 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18. For analysis of the due process balancing test in Montana, see generally,

11

*Bean v. Montana Board of Labor Appeals* (1998), 290 Mont. 496, 965 P.2d 256; *Dorwart v. Caraway*, 1998 MT 191, 290 Mont. 196, 966 P.2d 1121; *In re the Matter of M.F.* (1982), 201 Mont. 277, 653 P.2d 1205.

¶29 Here, we see no evidence that the nature of the private interest involved (Swanson's interest in physical possession of his license pending action from his home state) or its weight compels a conclusion that the seizure procedures under the "Implied Consent" law are unconstitutional. Certainly, there is a compelling governmental interest in removing drunk drivers from the highways. Additionally, there is a low risk of an erroneous deprivation of a license. Seizure of a driver's license comes only after a peace officer, who is a trained observer and investigator, has arrested a motorist for DUI, and the motorist has refused to submit to testing. Swanson's property interests in his license are suitably protected, particularly in view of the availability of a postseizure hearing, the granting of a temporary driving permit, and the fact that the seizure is of limited duration. Thus, Swanson's injury by the loss of his license was nominal, and the postdeprivation remedies made available by the State are more than sufficient to protect his minimal property interests. Swanson has not met his burden of showing a due process violation, and provides no credible argument showing that the nature and weight of his interest in possession of his license outweighs the State's interest in keeping drunk drivers off the road.

¶30 We affirm the District Court's denial of Swanson's petition for reinstatement of his driver's license.

_____
                                    Justice

We Concur:

_____
            Chief Justice

_____

_____
            Justices

Justice Terry N. Trieweiler concurring.

¶31    I concur with the majority's conclusion that seizure of the Defendant's driver's license and delivery to his home state was lawful. I also concur with the majority's conclusion that Swanson was not denied his right to due process by virtue of the State's Implied Consent Advisory Form. However, I disagree with the majority's reasons for arriving at that conclusion.

¶32    I specifically disagree with the majority's statement that "the advisory form was not erroneous nor did it affirmatively mislead Swanson." ¶ 18.

¶33    When Swanson was advised by a Montana law enforcement officer in the state of Montana that the consequence for refusal to submit to testing of his blood-alcohol level would be suspension of his Wyoming driver's license for six months, he was misinformed. The State of Montana has no authority to suspend Swanson's Wyoming driver's license. The only authority the State of Montana has with regard to nonresident drivers is found at §§ 61-8-402(7) and 61-5-203, MCA. The former provides not that an out-of-state driver's license will be suspended upon refusal to submit to tests for blood-alcohol level, but that it will be seized and sent to the licensing authority of the driver's home state. The latter statute provides that nonresident driver's privileges to drive in Montana can be suspended. There is no provision under Montana law for the suspension of a Wyoming driver's license.

¶34    The majority ignores the misinformation given to Swanson and other out-of-state drivers based on a technical argument that Montana statutory law includes out-of-state

14

driving privileges in Montana within the definition of "driver's license." However, in the context of the Implied Consent Advisory Form, which was read to Swanson, it is clear that it is his actual Wyoming driver's license and not his out-of-state driving privilege which he is being told he will lose. Furthermore, the issue is whether someone who submits or refuses to submit to a test for blood-alcohol level has been misled. It is disingenuous to suggest that the suspect is not misled because of a broad statutory definition of "driver's license" about which the out-of-state driver knows nothing.

¶35 I would conclude that the advice given to Swanson was incorrect and misleading by overstating the consequences of his refusal. Had he consented to testing on the basis of that misinformation I would vote, as I did in *State v. Simmons*, 2000 MT 329, that his consent was invalidly obtained and that any evidence produced from that consent should be suppressed. However, it does not logically follow that Swanson refused to submit to a blood-alcohol test because the consequences for refusal were overstated. Therefore, unlike the situation in *State v. Simmons*, I do not believe that Swanson acted to his detriment based on misinformation or coercion. For that reason, neither do I believe he has demonstrated that his right to due process was violated.

¶36 Therefore, although I do not agree with all that is said in the majority opinion, I specially concur with its decision to affirm the judgment of the District Court.

_____
Justice

15

Justice William E. Hunt, Sr., joins in the foregoing concurring opinion.

_____
William E. Hunt
Justice