No. 96-048

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

RICKY LAWRENCE WESSELL,

    Petitioner and Appellant,

  v.

STATE OF MONTANA, DEPARTMENT OF
JUSTICE, MOTOR VEHICLE DIVISION,

    Respondent and Respondent.

**FILED**

JUL 11 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Seventh Judicial District,
                In and for the County of Dawson,
                The Honorable Dale Cox, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Kevin R. Peterson, Simonton, Howe & Schneider,
        Glendive, Montana

    For Respondent:

        Hon. Joseph P. Mazurek, Attorney General,
        Brenda Nordlund, Assistant Attorney General,
        Helena, Montana

        Richard L. Burns, Glendive City Attorney,
        Glendive, Montana

Submitted on Briefs:  May 30, 1996

Decided:  July 11, 1996

Filed:

_____
             Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

Ricky Lawrence Wessell's driver's license was seized and his driving privileges were suspended pursuant to § 61-8-402, MCA, Montana's implied consent law. Wessell petitioned the District Court for the Seventh Judicial District, Dawson County, to reinstate his license on the grounds that it was wrongly seized. The District Court denied the petition. We reverse.

The issue on appeal is whether the District Court erred when it concluded that Wessell had refused to submit to a test for alcohol and therefore denied his petition challenging the suspension of his driving privileges pursuant to § 61-8-402, MCA.

## FACTS

On November 20, 1995, Wessell was stopped by a Glendive police officer for suspicion of driving under the influence of drugs or alcohol, in violation of § 61-8-401, MCA, after having crossed the center line of the street with his vehicle. Wessell consented to the field sobriety tests which were performed. He was then placed under arrest and transported to the Glendive Police Department for a breath, blood, or urine test pursuant to § 61-8-402, MCA.

Upon arriving at the police station, Wessell was read the Montana Department of Justice Implied Consent Advisory and was asked to submit to a breath test. Wessell consented to the breath test. The officer began the test sequence but was unable to complete the test because the internal standards check for the instrument failed. The officer attempted a second breath test, however, the standards check for the instrument failed again.

2

Wessell cooperated with the officer in attempting to take the breath test.

Wessell was then asked to submit to a blood test but stated that he was unable to submit to this method of testing. He explained to the officer that he had a great fear of needles which precluded him from taking the blood test. Wessell instead voluntarily offered to submit to a urine test. The officer refused this offer explaining that a urine test was not an option because the Glendive Police Department did not have the appropriate means to maintain the integrity of a urine testing sample.

Wessell declined the option to have an independent test completed because as he understood the procedure his driving privileges would be suspended regardless as a result of his failure to submit to the designated blood test. The officer completed the State of Montana Alcohol/Drug Testing Refusal Affidavit indicating that Wessell had refused a breath, blood, or urine test pursuant to § 61-8-402, MCA, and seized his driver's license.

Wessell filed a petition with the District Court challenging the suspension of his driving privileges. The District Court ordered the Montana Department of Justice, Motor Vehicle Division to reinstate his driving privileges pending the outcome of a hearing on his petition. At the hearing, the parties stipulated that there were no questions as to what factually occurred, including the fact that Wessell had expressed a great fear of needles. The District Court heard sworn testimony from the police officer and from Wessell himself. The Court then issued its

3

findings of fact, conclusions of law, and order which concluded that Wessell's driver's license was properly subject to suspension and vacated the prior reinstatement of his driving privileges. Wessell appeals the denial of his petition.

DISCUSSION

Did the District Court err when it concluded that Wessell had refused to submit to a test for alcohol and in denying his petition challenging the suspension of his driving privileges, pursuant to § 61-8-402, MCA?

There was no factual dispute that Wessell did not take the blood test. The issue before the District Court was whether Wessell's conduct constituted a "refusal" under § 61-8-402, MCA, and was therefore a legal issue. We review conclusions of law to determine whether the district court's interpretation of the law was correct. Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

Section 61-8-402, MCA, commonly known as the implied consent statute, provides in part as follows:

(1) A person who operates or is in actual physical control of a vehicle upon ways of this state open to the public is considered to have given consent, subject to the provisions of 61-8-401, to a test or tests of the person's blood, breath, or urine for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person's body if arrested by a peace officer for driving or for being in actual physical control of a vehicle while under the influence of alcohol, drugs, or a combination of the two. The test or tests must be administered at the direction of a peace officer . . . . The arresting officer may designate which test or tests are administered. A test for alcohol must be given first, whether or not that test also tests

4

for drugs, and if the test shows an alcohol concentration of 0.10 or more, a test for drugs may not be given.

. . . .

(3) If a driver under arrest refuses upon the request of a peace officer to submit to a test or tests designated by the arresting officer as provided in subsection (1), a test may not be given, but the officer shall, on behalf of the department, immediately seize the person's driver's license . . . .

Wessell first argues that his petition should have been granted because he consented to the breath test. He claims that the statute is disjunctive and does not expressly authorize more than one test for alcohol to which he gave his consent. The State asserts, however, that the language "test or tests" allows consecutive tests for alcohol and that Wessell refused to submit to the alternate blood test.

We have held that our function as an appeals court is to ascertain what the Legislature meant and to do that, if possible, by looking to the plain meaning of the words in the statute. Strzelczyk v. Jett (1994), 264 Mont. 153, 157, 870 P.2d 730, 732-33.

The "test or tests" language was adopted by the Legislature in 1993 when it included the provision allowing a test for drugs once an alcohol test has been given if the alcohol concentration is less than 0.10. This amendment changed the testing language from singular to plural, as it authorized a second test for the presence of drugs. The singular nature of the language, as to a test for alcohol, was not changed and the statute still provides that, "[a] test for alcohol must be given first, whether or not that test also tests for drugs, and if the test shows an alcohol concentration of

5

0.10 or more, [then] a test for drugs may not be given." Section 61-8-402, MCA (emphasis added). We determine that the "test or tests" language adopted by the Legislature at the time it added the allowance for a drug test refers to the sequential testing for alcohol and then drugs and not for consecutive tests for alcohol alone.

Under the plain language of the statute, therefore, only one test for alcohol may be given. However, this limitation must be considered in light of the definition of "test" as set forth in Rule 23.4.201(31), ARM, which provides that a "test" for purposes of drug and alcohol analysis must be a full and complete analysis. The analysis for a breath test is considered complete when a breath sample is properly delivered, "the breath analysis instrument has executed its prescribed program, a final result is obtained, and a printed record is produced by the breath test instrument." Rule 23.4.201(31), ARM. The test for other biological samples (i.e., blood and urine) is also defined as a full and complete analysis of the sample(s). Rule 23.4.201(31), ARM. Section 61-8-402, MCA, clearly contemplates that a test for alcohol must be a complete analysis by its language requiring the results of the alcohol test, "if the test shows an alcohol concentration of 0.10 or more, a test for drugs may not be given."

Under the above definition, a full and complete analysis was not achieved and therefore a valid breath test did not exist. The officer was within the statutory constraints when he designated a second method of testing in order to achieve a test for alcohol.

6

Wessell next asserts that his refusal should be excused because although he did not submit to the blood test he fully cooperated with the officer and was unable to participate in the test as a result of a disability. The State argues that neither § 61-8-402, MCA, nor § 61-8-403, MCA, provides the means to disregard a motorist's refusal to submit to a test as designated by the officer.

We have previously stated that the purpose of § 61-8-402, MCA, is to encourage the person arrested for DUI to cooperate and submit to testing. Johnson v. Division of Motor Vehicles (1985), 219 Mont. 310, 313, 711 P.2d 815, 817; State v. Christopherson (1985), 217 Mont. 449, 451, 705 P.2d 121, 123. This statute serves the state's interest in obtaining reliable and relevant evidence for use in subsequent criminal proceedings.

We have held that certain uncooperative actions by the motorist may comprise a refusal. A refusal to take a blood test does not have to be express but may be implied, for example from an individual failing to cooperate by repeatedly requesting an attorney to be present prior to the test. Johnson, 711 P.2d at 817. It may also arise from a lack of cooperation when a motorist gives a deficient performance of a requested test when he or she is capable of completing the test. Hunter v. State (1994), 264 Mont. 84, 869 P.2d 787.

In the present case it is clear that Wessell's actions were fully cooperative. Wessell consented to the breath testing procedure for alcohol and was cooperative twice in attempting to

7

achieve a valid test through the means provided. It is not Wessell's fault that the machine failed to operate properly. Wessell, when asked to submit to a blood test, immediately explained that he was unable to participate in this test because of his extreme fear of needles but was willing to submit to a urine test. He argues that where an individual has fully cooperated but was unable to participate in a test that refusal should be excused.

Thus Wessell argues that the state of mind or motive of the individual asked to submit to testing is a relevant factor for the district court to consider when determining if the refusal should be excused. Wessell cites Matter of Griffiths (Idaho 1987), 744 P.2d 92, to support his assertion that an individual's fear of needles may be grounds for refusing a blood test.

The Griffiths decision, interpreting Idaho's implied consent statute, is distinguishable from the present case. Idaho's implied consent statute specifically provides for a hearing if requested by the motorist following the seizure of their license for refusal to submit to testing to determine "why" the test was refused. Idaho Code § 18-8002(4) (1984). This statute sets forth that a defendant may have his license reinstated if he can prove any of several factors listed, including "that, although defendant refused the requested evidentiary test, he did so with sufficient cause." Idaho Code § 18-8002 (1984). The Idaho Supreme Court, in applying this statute, held that if a fear of needles is of such magnitude to prevent the motorist as a practical matter from submitting to the test and this fear is communicated to the officer at the time

8

of the test then there may exist sufficient cause to refuse the test. Griffiths, 744 P.2d at 100.

Section 61-8-403, MCA, however, provides for a hearing only to determine "whether . . . the motorist refused the test." It does not have a specific provision for inquiring as to why the refusal occurred or for excusing the refusal if there was sufficient cause to refuse. Although the statute does not provide the district court with the discretion to determine if there was sufficient cause for an individual to refuse the test, it does allow the district court to take testimony and examine the facts of the case to determine whether the officer was wrong in concluding that there was a refusal to submit to a test. Section 61-8-403(4), MCA. This section allows the district court the latitude to consider whether the individual was willing but unable to participate in the test as a result of a disability or whether the individual was simply unwilling to cooperate and refused the test.

We recently addressed § 61-8-403(4), MCA, in Hunter, 869 P.2d 787. In that case, we stated that the burden of proving that the officer was wrong in concluding that the petitioner refused to submit to the test was that of the petitioner. Hunter, 869 P.2d at 789. See Section 26-1-401, MCA. Hunter consented to submitting to a breath test. After five or six failed attempts in which she did not blow hard enough to activate the machine the officer proceeded to conduct other sobriety tests. When they returned to the breath test she stated that she had performed enough tests and would not make another attempt. The officer thus determined that she had

9

refused the test and seized her license. We held that Hunter failed to meet her burden of proof as she did not inform the officer at the time of the test of any disability which prevented her from completing a valid test, nor did she introduce any medical evidence at the hearing to indicate that she was unable to perform. Hunter, 869 P.2d at 789-90.

In the present case, it was not contested that Wessell had a valid fear of needles which prevented him from being able to submit to a blood test and therefore we accept this as stipulated. The record shows that he was willing to consent to a test for alcohol but was prevented from doing so by a psychological inability to perform resulting from his disabling fear of needles, which he immediately disclosed to the officer. We determine that under the facts of this case, this psychological inability to perform the test is the equivalent of a physical disability which precludes an individual from participating in or completing a valid test regardless of their willingness. For example, if an individual has asthma and was physically unable to complete a breath test, that inability would not be considered a refusal under § 61-8-403(4), MCA, and our rationale in Hunter.

The conclusion of the District Court that Wessell refused the test was based upon the officer's testimony, the Implied Consent Advisory Form signed by the officer, and the petitioner's testimony that he did not submit to the blood test. The record also shows that Wessell cooperated to his fullest physical and mental abilities but was precluded from participating in the test as a

10

result of a stipulated psychological inability, which in this case constitutes a disability. We hold that the District Court erred in its interpretation of § 61-8-403(4), MCA, by concluding that Wessell's inability to participate in the test regardless of his willingness was a "refusal."

Reversed and remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

11