No. 96-345

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


JAMES GENTRY,

Petitioner and Appellant,

v.

STATE OF MONTANA, DEPARTMENT
OF JUSTICE, MOTOR VEHICLE DIVISION,

Respondent and Respondent.


APPEAL FROM:   District Court of the Seventh Judicial District,
In and for the County of Dawson,
The Honorable Dale Cox, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Kevin R. Peterson; Great Plains Law Firm,
Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General,
Brenda Nordlund, Assistant Attorney General,
Helena, Montana


Submitted on Briefs: February 20, 1997

Decided:   May 27, 1997
Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.


James Gentry appeals from the order of the Seventh Judicial District Court,

Dawson County, denying his petition to challenge the suspension of his driving privileges for refusing to submit to a breathalyzer test under Montana's implied consent law. We affirm.

We address the following issues on appeal:

1. Did the District Court err in refusing to apply the "confusion doctrine?"

2. Did the District Court err in denying Gentry's petition where the record discloses that a notary public was not present when the arresting officer signed the affidavit upon which the suspension was based?

BACKGROUND

James Gentry (Gentry) was stopped by Officer Richard Rowe (Rowe) of the Glendive Police Department for suspicion of speeding and careless driving. Rowe asked Gentry for his driver's license, registration and proof of insurance. As Gentry was getting his license, Rowe detected the odor of an alcoholic beverage coming from Gentry and noticed that Gentry's eyes were glassy and bloodshot. Rowe asked Gentry if he had been drinking, and Gentry replied that he had. Rowe administered a series of field sobriety tests, which Gentry failed. Rowe arrested Gentry for driving under the influence of alcohol (DUI) and transported him to the Glendive Police Department.

On the way to the police station, Gentry repeatedly asked Rowe to see the speed at which his vehicle had been clocked on Rowe's radar unit. Rowe had stopped Gentry without using his radar device and explained that, as a result, the speed was not recorded on the radar unit. After arriving at the police station, Gentry requested a drink of water and asked if he could call his attorney. According to Gentry, Rowe told him he could not have a drink because it would effect the breathalyzer test Rowe was going to ask him to take, and that he "couldn't use the phone at that time."

Rowe gave Gentry a copy of the implied consent advisory form, and read it aloud as Gentry read along. Rowe then requested Gentry to submit to a breathalyzer test to determine the alcohol concentration in his body. Gentry refused the test and insisted on a blood test. Rowe explained that taking a blood test was not an option, but that he had a right to get one, at his own expense, when he left the police station. Based on Gentry's refusal of the breathalyzer test, Rowe completed the State of Montana Alcohol/Drug Testing Refusal Affidavit (refusal affidavit), seized Gentry's driver's license, and issued him a notice of suspension or revocation and a citation for the DUI offense. A notary public was not present when Rowe signed the refusal affidavit.

Gentry subsequently filed a petition in the District Court, pursuant to 61-8-403, MCA, challenging the suspension of his driver's license; he also requested a stay of the license suspension. The District Court ordered the Department of Justice, Motor Vehicles Division (the Department), to reinstate Gentry's driving privileges pending the outcome of proceedings on his petition.

The District Court conducted a hearing and ordered the parties to submit proposed findings of fact and conclusions of law. Although the issue at the hearing was whether Rowe had reasonable grounds to stop Gentry and probable cause to arrest him, Gentry raised two additional issues in his proposed findings of fact and conclusions of law. First, he sought application of the "confusion doctrine" to his case. He claimed that Rowe advised him of his rights to an attorney before reading him the advisory form, and that he was confused when Rowe told him he could not talk to an attorney before deciding whether to take the breathalyzer test. Gentry also stated he was confused about the information contained in the advisory form and the fact that he could not take a blood test instead of a breath test. Second, Gentry contended that the Department failed to establish that the refusal affidavit was properly notarized, thus violating 61-8-402(3), MCA, which requires that a sworn report be forwarded to the Department.

In its findings of fact, conclusions of law and order, the District Court determined that Rowe had reasonable grounds to believe that Gentry was operating a motor vehicle upon the ways of the state open to the public while under the influence of alcohol, drugs, or a combination of both; that Rowe arrested Gentry; and that Gentry refused, upon request of a peace officer, to submit to a breathalyzer test. The court also concluded that Gentry did not plead the confusion doctrine and did not testify, offer other evidence or argue that he was confused at the time he declined the breathalyzer test. The court did not address the notarization issue. The District Court denied Gentry's petition and

ordered that his driving privileges were subject to suspension.  Gentry appeals.

STANDARD OF REVIEW

Gentry claims that the District Court's denial of his petition was premised on incorrect legal conclusions.  We review a district court's conclusions of law to determine whether they are correct.  Anderson v. State Dept. of Justice (1996), 275 Mont. 259, 262, 912 P.2d 212, 214 (citation omitted).

DISCUSSION

1. Did the District Court err in refusing to apply the "confusion doctrine?"

In a 61-8-403, MCA, action for reinstatement of a suspended or revoked driver's license, the burden is on the petitioning motorist to prove that the suspension or revocation of the license is invalid.  See 26-1-401, MCA; Hunter v. State (1994), 264 Mont. 84, 87, 869 P.2d 787, 789; Jess v. State, Dept. of Justice, MVD (1992), 255 Mont. 254, 259-60, 841 P.2d 1137, 1140.  Pursuant to 61-8-403(4), MCA, a district court's review is limited to three issues: (1) whether a peace officer had reasonable grounds to believe that the person had been driving or was in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol, drugs, or a combination of the two; (2) whether the person was placed under arrest; and (3) whether the person refused to submit to the test for the presence of alcohol or drugs in the person's body.

Gentry argues on appeal that he was in a state of confusion when he refused the breathalyzer test and that his refusal should be excused, as a matter of law, under the "confusion doctrine."  He contends that Rowe read him his Miranda rights, including his right to an attorney, after Rowe arrested him and placed him in the back of the patrol car to be transported to the police station.  Gentry claims that Rowe did not explain to him why he could not contact his attorney prior to taking or refusing the breathalyzer test and that, as a result, he was confused concerning his right to counsel.  Gentry also claims he did not understand the advisory form and why he could not take a blood test instead of the breathalyzer.

At the outset, we address whether the confusion doctrine falls within one of the three issues properly before a district court in a proceeding challenging a driver's license suspension.  It is clear from our brief recitation of Gentry's confusion doctrine argument that the doctrine relates to whether the person did or did not refuse the test; that is, the confusion doctrine--if adopted and applicable--serves to excuse what would otherwise be a refusal of the test.  Thus, we conclude that the confusion doctrine is within the scope of 61-8-403(4)(iii), MCA, pursuant to which a district court must determine whether the person refused to submit to the requested breathalyzer test for the presence of alcohol in the person's body.  Therefore, the doctrine need not be specifically pleaded.  The burden, of course, remains on the petitioner to prove that the license suspension was invalid.  See 26-1-401, MCA; Hunter, 869 P.2d at 789.

Under the confusion doctrine, when a police officer introduces the subject of a DUI arrestee's right to counsel by giving a Miranda warning prior to requesting a chemical test, the arrestee's subsequent refusal to take the designated test until an attorney is consulted might not constitute a "refusal to submit" to a chemical test.  Blomeyer v. State (1994), 264 Mont. 414, 418-19, 871 P.2d 1338, 1341(citation omitted).  The basis of the doctrine is that a driver may be confused by being informed via his Miranda rights that he has a right to counsel and then being asked to take a breathalyzer test under the implied consent law, where no right to counsel exists; the confusion may mislead the driver to believe he has the right to an attorney before deciding whether to submit to a test.  Blomeyer, 871 P.2d at 1342 (citations omitted).

A number of jurisdictions have adopted the confusion doctrine.  Blomeyer, 871 P.2d at 1341 (citing Rust v. Department of Motor Vehicles, Div. of Driver's Lic. (Cal. App.1968), 73 Cal.Rptr. 366; State Department of Highways v. Beckey (Minn.1971), 192 N.W. 2d 441; and State v. Severino (Haw. 1975), 537 P.2d 1187).  To date, while we have recognized the doctrine's existence, we have declined to decide whether to adopt it until presented with a case which would warrant its application.  Blomeyer, 871 P.2d at 1342.  We follow the Blomeyer approach here, determining first whether the facts and circumstances of this case would warrant application of the confusion doctrine.

In Blomeyer, we stated that the confusion doctrine would apply only when Miranda rights are given prior to, or contemporaneously with, a driver being advised of his or her rights and obligations under the implied consent law. Blomeyer, 871 P.2d at 1342. There, we determined that the confusion doctrine was not applicable, because the driver was Mirandized after the implied consent form was read and after he had refused to submit to a breathalyzer test. Blomeyer, 871 P.2d at 1342. Thus, there was no likelihood that he confused his right to counsel under Miranda with his rights and obligations under the implied consent law. Blomeyer, 871 P.2d at 1342.

In the present case, the District Court did not make a specific finding as to when Gentry was given his Miranda rights, and the record contains conflicting evidence on that question. Gentry testified that Rowe "read me my rights" at the time of arrest, prior to being taken to the police station; he did not specifically testify that he was advised of his right to counsel at that time. Rowe was not asked when he Mirandized Gentry during either his direct, cross-, redirect or recross-examination. His offense report indicates, however, that Rowe read Gentry his Miranda rights at the police station after Gentry refused the breathalyzer test. This factual dispute need not be resolved, however, because we conclude that even assuming Gentry was Mirandized prior to his refusal of the breathalyzer test, he has not established the applicability of the confusion doctrine to the facts of this case.

As we stated above, a petitioner challenging a driver's license suspension for refusing a test under the implied consent statute must prove that the suspension was invalid. See 26-1-401, MCA; Hunter, 869 P.2d at 789. In the context of claimed reliance on the confusion doctrine, "[w]hether a suspect is confused is a question of fact and must, therefore, be established by sufficient evidence." Ehrlich v. Backes (N.D. 1991), 477 N.W. 2d 211, 213 (citation omitted).

Here, Gentry did not testify that he was confused by the sequence of the Miranda warning and the statement on the advisory form that he was not entitled to counsel before taking or refusing the test. Nor did he offer other evidence establishing--or even suggesting--any confusion on his part regarding a right to counsel prior to deciding whether to submit to the breathalyzer test. Gentry merely testified that he asked Rowe to repeat several of the statements on the advisory form so that "there could be a full understanding" of what was being asked and that he "wanted to be sure what Officer Rowe was reading" and "make double sure what I was going over." Based on the record before us, it is clear that Gentry did not establish facts and circumstances which would warrant application of the confusion doctrine.

Given the total absence of evidence supporting application of the confusion doctrine in this case, it is not necessary to further define the nature and extent of facts and evidence which would warrant application of the doctrine where a person is Mirandized prior to, or contemporaneously with, being requested to submit to a chemical test under Montana's implied consent statute. Suffice it to say that jurisdictions which have adopted and applied the confusion doctrine state the requirements in different terms. In Ehrlich, for example, the Supreme Court of North Dakota mentioned only "the need for the arrestee to testify that she was confused in order to raise the issue as one of fact." Ehrlich, 477 N.W.2d at 213 (citation omitted). In California, the driver must manifest confusion by asserting the alleged right to an attorney; after such a manifestation, the peace officer has a duty to explain that the right to counsel does not apply to the breathalyzer test. McDonnell v. Department of Motor Vehicles (Cal. App. 1975), 119 Cal.Rptr. 804, 807-08. Only objective, officer-induced confusion supports relief from a driver's license suspension for refusing or failing to submit to chemical testing after a valid arrest. Monter v. Director of Motor Vehicles (Cal. App. 1990), 268 Cal.Rptr. 301, 306. In Washington, drivers who advance the confusion doctrine have the burden of showing that they made their confusion apparent to the officer and were denied further clarification. Haas v. State, Dept. of Licensing (Wash. App. 1982), 641 P.2d 717, 719 (citation omitted). As noted, further refinements to our perception of the confusion doctrine are unnecessary unless and until such time as we determine that application of the doctrine is warranted and formally adopt the doctrine as part of Montana law.

We hold that the District Court did not err in failing to apply the confusion doctrine. 2. Did the District Court err in denying Gentry's petition where the record

discloses that a notary public was not present when the arresting officer signed the affidavit upon which the suspension was based?

As noted above, the District Court did not rule on Gentry's contention that his driver's license suspension should be invalidated because Rowe's signature on the refusal affidavit was not notarized and, as a result, a sworn report was not submitted to the Department as required by law. Gentry contends it is undisputed that a notary public was not present when Rowe signed the refusal affidavit and, furthermore, that the Department failed to establish at the hearing that the affidavit was ever notarized. Citing to authority from other jurisdictions, he argues that a sworn report is a jurisdictional prerequisite, or mandatory condition precedent, to the suspension of his driver's license. The Department contends that Gentry waived the issue by failing to timely raise it.

We addressed a similar situation in Thompson v. Department of Justice (1994), 264 Mont. 372, 871 P.2d 1333. There, Thompson was arrested for DUI and refused a breathalyzer test; the Department suspended his driver's license. Thompson, 871 P.2d at 1334. Thompson challenged the suspension in the district court, arguing that the Department had no authority to suspend his license because the refusal affidavit was not a sworn report as required by 61-8-402(3), MCA. Thompson, 871 P.2d at 1334. The court inquired whether Thompson had notified the county attorney's office that the alleged lack of the required sworn report was an issue in the case, and Thompson responded that he had not done so. Thompson, 871 P.2d at 1335. The court concluded that it should not consider the issue. We affirmed, emphasizing that no notice was given that the issue was being raised and, as a result, neither the county attorney's office nor the Department had the opportunity to present evidence to refute Thompson's contentions. Thompson, 871 P.2d at 1335-36. We concluded that the sworn report issue was not properly raised or presented and did not address it substantively. Thompson, 871 P.2d at 1336.

Thompson is applicable here. Notwithstanding Thompson's holding that lack of notice of an issue outside the scope of those set forth in 61-8-403(4), MCA, prevents consideration of the issue, Gentry did not plead--and thereby give notice of--the absence of a sworn report to the Department. He merely inquired of Rowe at the hearing regarding the lack of notarization at the time Rowe signed the refusal affidavit. He then included his legal position regarding the lack of a sworn report in his post-hearing findings of fact and conclusions of law. As was the case in Thompson, the Department had no opportunity to present evidence to refute Gentry's allegations. Consideration of such a late-raised issue, where the issues before the court are ordinarily limited by 61-8-403(4), MCA, and the burden is on the petitioner rather than the Department, would be both unfair and prejudicial to the Department. Therefore, we conclude that Gentry waived the sworn report issue by not timely raising it and we decline to address the issue substantively.

Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE
/S/ JAMES C. NELSON
/S/ TERRY N. TRIEWEILER
/S/ JIM REGNIER