No. 97-519

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 274N

BUD HARVEY STRODE,

Petitioner and Appellant,

v.

DEPARTMENT OF JUSTICE,

STATE OF MONTANA,

Respondent and Respondent.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Mike Salvagni, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Bud H. Strode, *Pro Se*, Gallatin Gateway, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General,

Micheal S. Wellenstein, Ass't Attorney General, Helena, Montana

Marty Lambert, Gallatin County Attorney,

Susan B. Swimley, Deputy County Attorney, Bozeman, Montana

Submitted on Briefs: October 22, 1998

Decided: November 12, 1998

Filed:

No

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2. Bud Harvey Strode (Strode), appearing *pro se*, appeals from the Findings of Fact, Conclusions of Law and Order of the Eighteenth Judicial District Court, Gallatin County, which denied his Amended Petition for Reinstatement of Driving Privileges. We affirm.**

## BACKGROUND

**¶3. Strode was driving his vehicle around dusk on January 5, 1997, when he was observed by Montana Highway Patrol Officer Sam Hasz (Hasz), who was in the oncoming lane of travel. Hasz noticed that Strode's vehicle lights were not on and, because it was difficult to see approaching vehicles if their headlights were not on, he flashed the headlights of his patrol vehicle once. Strode's vehicle crossed into Hasz's lane of travel and Hasz took evasive action to avoid a collision. Thereafter, Hasz made a U-turn, turned on his vehicle's top lights and followed Strode. Strode did not stop; instead, after traveling approximately 1/4 mile, he turned off the highway onto a westbound road. Hasz followed Strode for approximately 200 yards before Strode pulled over.**

¶4. Strode got out of his vehicle and Hasz asked him to get back inside. Hasz asked for Strode's driver's license, registration and proof of insurance and Strode did not produce either the license or the registration; he gave Hasz proof of insurance for another vehicle. Hasz noticed that Strode's vehicle license plates had expired in 1982.

¶5. During their conversation, Hasz smelled a strong odor of alcohol on Strode's breath; Strode stated that he had been working on his vehicle's radiator and the odor was Prestone. Hasz later testified that he knew he was smelling alcohol rather than Prestone.

¶6. Hasz asked Strode to take a preliminary breath test (PBT) at the scene and Strode agreed, but kept attempting to grab the PBT instrument after being told not to do so. Strode's first breath was too weak, which Strode blamed on a lung problem and dentures. On his second try, he registered a .126 breath alcohol concentration (BAC). Hasz subsequently gave Strode the horizontal gaze nystagmus test and Strode scored five points out of a possible six, indicating an 80% likelihood that Strode's BAC was over .10.

¶7. Hasz arrested Strode for driving under the influence of alcohol (DUI), advised him of his *Miranda* rights, placed him in the patrol car and left the scene. He explained to Strode that he was going to ask Strode to take a blood test because of the difficulty Strode had with the breath test; Strode replied that he was not very fond of needles. At the local hospital, Hasz read Strode the implied consent advisory form which states, in pertinent part, "You must decide to take or refuse this testing without talking to an attorney" and asked Strode to take a blood test. Strode was permitted to go to the bathroom and, thereafter, he asked--and was allowed--to read the advisory form. A few minutes later, Hasz asked Strode if he was going to take the test and Strode said he was not sure. Strode then asked if he could talk with an attorney and Hasz indicated to him the pertinent portion of the advisory form indicating that he could not. Over approximately the next 30 minutes, Strode read the advisory form, Hasz read the form to him and the two discussed the fact that Strode could not talk to an attorney before taking or declining the test. Hasz then requested a yes or no answer with regard to taking the test and warned that any other answer would be considered a refusal. Strode responded, "Well, I don't know. I don't know what I should do." Hasz then transported Strode to jail and Strode subsequently was notified that his driving privileges had been suspended for refusal to take the blood test.

¶8. Strode petitioned for reinstatement of his driving privileges and requested--and received--the restoration of his driving privileges until a decision was made on his petition. At the outset of the hearing on the petition, Strode clarified that he was raising three issues relating to his refusal to take the blood test: 1) that his fear of needles was a disability which precluded him from taking the test; 2) that the officer's failure to warn him of the possible medical consequences resulting from the blood test constituted a lack of informed consent; and 3) the confusion doctrine. His testimony at the hearing differed markedly from that given by Hasz. Hasz's version of their conversation at the hospital was corroborated, in part, by a hospital employee.

¶9. After the hearing, the parties submitted proposed findings and conclusions. Strode's submission contained legal issues not previously raised. Based on its weighing of the conflicting evidence and determinations of the credibility of the witnesses, the District Court made findings which essentially rejected Strode's version of the events at issue. It then concluded that Hasz had particularized suspicion to stop Strode, Strode was properly arrested for DUI, Strode refused to submit to the blood test and, finally, Strode's refusal was not based on a fear of needles which amounted to a disability. The court did not address the issues raised by Strode after the hearing. Strode appeals.

## STANDARDS OF REVIEW

¶10. In reviewing a district court's denial of a petition for reinstatement of driving privileges, we determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. Ellenburg v. Montana Dept. of Justice (1996), 280 Mont. 268, 270, 929 P.2d 861, 863 (citation omitted).

## ISSUES

¶11. Strode raises several constitutional issues on appeal which were not raised at any point in the District Court proceedings. Because it is well-established that this Court will not address issues raised for the first time on appeal (*see, e.g.,* Seyferth v. State, Dept. of Justice (1996), 277 Mont. 377, 387, 922 P.2d 494, 500), we decline to address those issues newly raised here.

¶12. Strode also raises issues on appeal which he presented in the District Court only

after the hearing on his petition had concluded. We decline to address those issues as well, because those issues were not timely and properly raised in that court. In this regard, while Strode correctly contends that the District Court allowed him the opportunity to make legal arguments in his posthearing submission, Strode's *pro se* status undoubtedly contributes to his misunderstanding of the scope of the court's authorization. Cases are decided on the basis of the issues raised at the outset and the evidence presented at hearing or trial. While trial courts commonly invite the parties to submit posthearing findings and conclusions, as the District Court did in this case, parties simply are not entitled to raise new issues at that time.

¶13. We address the following issues raised by Strode and properly before us:

¶14. 1. Did the District Court err in determining that Strode's refusal to take the blood test was not based on his fear of needles?

¶15. 2. Did the District Court err in failing to conclude that the confusion doctrine applied?

¶16. 3. Did the District Court err in failing to conclude that Strode's informed consent to the blood test is necessary before he can be required to submit to that test?

## DISCUSSION

¶17. 1. Did the District Court err in determining that Strode's refusal to take the blood test was not based on his fear of needles?

¶18. Strode relies primarily on Wessell v. State, Dept. of Justice (1996), 277 Mont. 234, 921 P.2d 264, in arguing that the District Court was required to conclude in this case that his fear of needles rendered him unable to submit to the requested blood test. His reliance on *Wessell* is misplaced.

¶19. In *Wessell*, it was stipulated that the defendant had expressed a great fear of needles which prevented him from being able to submit to the blood test. We concluded, under the facts of that case, that defendant's disabling fear of needles constituted a psychological inability to perform the test and equated to a physical disability precluding participation in the test regardless of a willingness to do so. *Wessell*, 277 Mont. at 240, 921 P.2d at 267-68. On that basis, we held that the trial

court erred in concluding that Wessell had refused the test. *Wessell*, 277 Mont. at 241, 921 P.2d at 268.

¶20. In the present case, there was no stipulation to Strode's disabling fear of needles or a resulting psychological inability to perform the test. Indeed, the evidence relating to any fear of needles was conflicting. Hasz testified that Strode made only one reference to needles and commented merely that "I am not very fond of needles." Strode's testimony was that he told Hasz on two occasions, in the lobby of the hospital, of his serious aversion to needles. In addition, he testified that he refused to perform the blood test "[b]ecause of an inability to perform the test." A hospital employee who was nearby during Hasz and Strode's conversations in the lobby provided partial corroboration for Hasz's version of the events, by testifying that she did not recall Strode bringing up the subject of needles.

¶21. After weighing the conflicting evidence and determining the credibility of the witnesses, the District Court found that Strode had merely stated, on one occasion, that "I am not very fond of needles" and did not raise the issue again during the approximately 30 minutes Hasz waited for his decision about taking the blood test. The court's findings are supported by substantial evidence and are not otherwise clearly erroneous.

¶22. The court concluded, based on its findings, that Strode refused to submit to the blood test and that his refusal was not based on a fear of needles which amounted to a disability. On this record, which differs substantially from that in *Wessell*, we hold that the District Court's conclusion was not incorrect.

¶23. 2. Did the District Court err in failing to conclude that the confusion doctrine applies?

¶24. Under the "confusion doctrine," when a law enforcement officer introduces the subject of a DUI arrestee's right to counsel by giving the *Miranda* warning prior to requesting a chemical test, the arrestee's subsequent refusal to take the requested test until an attorney is consulted may not constitute a refusal to submit to the test. Gentry v. State, Dept. of Justice (1997), 282 Mont. 491, 495, 938 P.2d 693, 696 (citation omitted). We have recognized the doctrine in a number of cases, but have declined to adopt it pending presentation of a case which would warrant its application, *see Gentry*, 282 Mont. at 496, 938 P.2d at 696 (citations omitted). It is

necessary to first determine whether the facts and circumstances of the case would warrant application of the doctrine in the event we adopted it. *Gentry*, 282 Mont. at 496, 938 P.2d at 696. Here, the District Court did not directly address Strode's confusion doctrine arguments and Strode contends that the facts and circumstances of this case warrant application of the doctrine. We disagree.

¶25. As we observed in *Gentry*, whether a person is confused is a question of fact which must be established by sufficient evidence. *Gentry*, 282 Mont. at 497, 938 P.2d at 696 (citation omitted). Moreover, a petitioner challenging a suspension of driving privileges carries the burden of establishing that the suspension was invalid. *Gentry*, 282 Mont. at 494-95, 938 P.2d at 695 (citations omitted). Here, Strode did not testify that he was confused by the sequence of the *Miranda* warning and the advisory consent form stating that he was not entitled to an attorney before taking or refusing the test. Moreover, Strode affirmatively testified that he refused the test because of an inability to perform the test. No mention was made of confusion over his right to consult an attorney before deciding whether to submit to the test.

¶26. Based on this record, Strode clearly did not establish facts and circumstances which would warrant application of the confusion doctrine and, as a result, we need not consider this issue further. We hold that the District Court did not err in failing to conclude that the confusion doctrine applies in this case.

¶27. 3. Did the District Court err in failing to conclude that Strode's informed consent to the blood test is necessary before he can be required to submit to that test?

¶28. Strode's arguments relating to informed consent are, at best, difficult to follow. Moreover, we observe that his proposed findings of fact and conclusions of law in the District Court did not address the subject in any way. Thus, it is questionable whether he is in a position to assert error in this regard.

¶29. In any event, the implied consent statutes clearly do not require an arresting officer to obtain informed consent for a blood alcohol test or address the subject in any way. Furthermore, while Strode cites to various federal regulations which purport to relate to informed consent, he advances no statutory or case law authority supporting his position, as required by Rule 23(a)(4), M.R.App.P. Absent such authority, and in light of both § 61-8-403, MCA, and our cases (*see, e.g., Gentry*, 282 Mont. at 495, 938 P.2d at 695) limiting a district court's review in driving privilege

**reinstatement proceedings to three issues--none of which directly touches on the matter of informed consent, we hold that Strode has not established any error by the District Court in this regard.**

**¶30. Affirmed.**

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER