OPINION
Opinion by
Associate Justice WINDHAM.
SUMMARY
Defendant was arrested and charged with Driving Under the Influence of Alcohol. After he was turned over to Officer Funke of the Tribal Police by the Montana Highway Patrol Officers who had arrested him and placed him in a patrol car, he was taken to the interview room at Tribal Law and Order. The events which then took place there were videotaped and that tape was introduced into evidence.
The videotape begins with Mr. Charlo being escorted into the interview room. He is in handcuffs and is escorted by Officer Funke and another man who keeps on going out of the picture. Charlo is able to walk upright and sits down in a chair where he sits with his head down. Funke exits and then returns. Officer Funke recites the date and time (omitting the year). He then identifies Martin Charlo and asks him to state his name and address. There is no response, whereupon Officer Funke offers his opinion that Mr. Charlo is too intoxicated to understand what is going on. More or less in response, Mr. Charlo offers his opinion that Officer Funke is “too fat,” which he repeats.
Officer Funke then secures a copy of the explanation of the consent law which he proceeds to read while seated at a table. Included in the explanation is that Officer Funke has the option of the available tests and that he has selected the breath test. Charlo, still handcuffed, is seated at the end of the table parallel thereto. Charlo sits impassively working his fingers. At some point he turns to face the officer and begins to bang the cuffs on the table.
Officer Funke asks him twice if he will take a breath test. Mr. .Charlo makes an ambiguous movement with his head which might be interpreted as a “no” gesture. Officer Funke then states “I’ll take that as a ‘no’.” Mr Charlo then mumbles something which was the subject of conjecture at trial and in the briefs. In argument before the Trial court, the Prosecutor quoted the Trial Judge as saying, after hearing this mumbled statement, “sounds like he’s saying, I’m not doing anything sir.” He was not contradicted by the Judge.
Defendant pleaded guilty to the DU I charge. He received a nine month deferred sentence with conditions. His driving license was also forfeited for 6 months under the provisions of section 61-8-402(4), Montana Code Annotated. He filed a timely petition challenging the suspension under section 61-8-403, Montana Code Annotated. These statutes have been adopted and incorporated into the *7 Tribal Code at section 2-11301(1)(a), CSKT Laws Codified.
A hearing on the petition was held February 7, 2006. On February 20, 2006, the Trial court, the Honorable Winona Tanner, Chief Judge presiding, issued a “Decision on Motion” denying the relief sought, having found that “the police had a clear basis for concluding that the defendant had refused to submit to a breath test.”
ISSUES PRESENTED
The following issues are presented on this appeal:
1. Whether the issue is moot in that the period of suspension has passed and defendant’s driving privilege has presumably been restored.
2. Whether defendant had the burden of proof at the hearing to determine the propriety of the license suspension.
3. What is the applicable standard of review on appeal.
4. Whether defendant was incapacitated by his intoxicated state to the point where he was incapable of giving consent to the specified breath test and, if so, whether this incapacity excused his failure to take the test.
5. Whether the trial court should have made more detailed findings.
6. Whether, given the guilty plea to the DUI charge, the purpose of the implied consent law was satisfied, thus making the implied consent law moot for this reason.
DISCUSSION
While this Court is not bound by Montana Supreme Court opinions, we consider them persuasive, particularly where, as here, the prosecution is based on Montana Statutes adopted by the Tribes. The Montana Supreme Court has decided a number of cases involving the implied consent laws and several general principles may be considered as settled, as follows:
• Driving is a revocable privilege. Jess v. State, (1992) 255 Mont. 254, 841 P.2d 1137.
• The police officer has the right to designate the test and has no obligation to offer a second type of test, even if the defendant is unable to complete the designated test. Hunter v. State, (1994) 264 Mont. 84, 869 P.2d 787.
With this prologue, we now turn to the specific issues presented by this case.

Mootness

As Appellant correctly points out, because of the more serious consequences of a second event within five years, in addition to the $200 financial consequences, it matters whether the present suspension is upheld.

Bu rden of Proof

The Montana Supreme Court in Hunter v. State (1994), 264 Mont. 84, 869 P.2d 787, considered the issue and held that the reinstatement proceeding is a civil case separate and apart from the criminal prosecution and that the defendant has the burden of proof, citing Maney v. State, (1992) 255 Mont. 270, 842 P.2d 704. We follow this precedent and hold that Mr. Charlo had the burden of proring that he was incapable of giving consent. We will assume, for the purposes of this case only, that the relevant burden is to prove the proposition in question by a preponderance of evidence.

Sta ndard of Review

The parties agree that the relevant standard of review is the “clearly erroneous” test, which appellant correctly asserts *8 involves a three part test. First, the court reviews the record to determine if the findings are based on substantial evidence. If the court finds substantial evidence, the court then determines whether the trial court “misapprehended the effect of the evidence.” Lastly, if the two determinations are met, the court may still find a decision clearly erroneous if “the record leaves the court with a firm conviction that a mistake has been committed.”
However, these rules do not fit well with a case where it might appear that defendant Charlo, having the burden of proof, failed to sustain it. Nonetheless, the trial court’s finding that “the police had a clear basis for concluding that the defendant had refused to submit to a breath test” is consistent with the conclusion that he had failed to sustain his burden of proof.

Defendant’s Claimed Incapacity

Whatever the appropriate standard of review, the crux of the case is whether Mr. Charlo was in a condition rendering him “incapable of refusal” as defined in section 61-8-402(3), Montana Code Annotated. The trial court found, in effect, that he was not in such a condition. On this point, Officer Funke testified as follows:
“Q. In your opinion, did Mr. Charlo understand what you were reading when you read him the implied consent advisory?
A. I don’t think he understood that he was even there.
Q. In your opinion then, if you had read him a recipe for chicken noodle soup would you have elicited the same response from him?
A. Yes.
Q. You said that you counted his head movement as a refusal to your request for a breath sample, correct?
A. He kind of shook his head, sort of.
Q. Okay, would it be fair to characterize that as a judgment call on your part?
A. Yeah.
Q. Mr. Charlo did not say, no he wouldn’t give you a breath sample?
A. No, he did not say that.
Q. And he did not, in fact, refuse outright to give you a breath sample?
A. He didn’t say yes either.
Q. Well, the question was, did he refuse outright to give you a breath sample?
A. No.”
Appellant relies heavily on this testimony and contends that this evidence cannot be reconciled with the trial court’s finding of a clear basis that defendant did refuse. However, the trial court also had the benefit of the videotape which showed exactly what took place in the interview room. We have also viewed the tape and while we may or may not have reached a different conclusion as finders of fact, our role is limited to determining whether there was a rational basis for the trial court’s finding. Officer Funke, while an experienced police officer, was not presented as an expert witness on the effects of alcohol consumption on cognitive ability.
In reviewing the videotape, several things are clear. First, Mr. Charlo was capable of walking on his own power. Second, Mr. Charlo was sufficiently aware of his surroundings to observe Officer Funke’s physique and to offer an opinion about it. Third, Mr. Charlo turned to face Officer Funke during the reading of the implied consent information form and banged his handcuffs on the table, possibly to drown out the officer’s voice. Fourth, when asked for his consent to a breath test, Mr. Charlo did move his head sideways. The uncontradicted statement attributed to the Trial Judge, by way of *9 interpreting the Trial Judge’s understanding of the last statement made by Mr. Charlo on the tape, may or may not accurately reflect Mr. Charlo’s actual words. However that may be, we deem the correct interpretation unnecessary to the proper resolution of the issues in this case.
Defense Counsel apparently made a tactical decision not to have Mr. Charlo appear at the hearing. This might have been consistent with the contention that Mr. Charlo did not know what was happening anyway so his absence was immaterial. However, Mr. Charlo had the burden of proof, and his mental state in presenting his bizarre performance might have been helpful to the trial court. This was not a criminal proceeding, where the defendant’s failure to testify may not be held against him. His failure to support his contention with his own testimony might well have been considered by the trial judge as a failure to cany his burden of proof. The evidence shows that he was aware of what was going on around him.

Sufficiency of the Findings

The findings in this case are the very soul of brevity consisting only of the statement “that the police had a clear basis for concluding that the defendant had refused to submit to a breath test.”
While we would urge the trial courts to find the facts upon which their conclusions are based in more detail, we cannot say that, in view of the evidence which we have reviewed, the result would be any different. Moreover, under Rule 19 of the Rules of Practice, it is the duty of counsel in a civil action to submit proposed findings of fact and conclusions of law no later than 5 days prior to trial. This was not done. Accordingly, neither party has grounds to complain of the inadequacy of the findings. We hold that the findings are sufficient.

Was the Purpose of the Statute Satisfied?

While the issue was not briefed as such, appellant cites and discusses the case of Wessell v. State, (1996) 277 Mont. 234, 921 P.2d 264. The Wessell Court held that the defendant had not refused a breath test where, although he cooperated, the machine malfunctioned. The defendant refused a blood test out of a fear of needles but offered to give a urine sample, which the police refused due to a lack of the means to maintain its integrity.
On these facts, the Montana Supreme Court held that there was no refusal where the defendant had valid medical or psychological reasons for his refusal (fear of needles). However, the Court also held that “the statute serves state interest in obtaining reliable and relevant evidence for use in subsequent criminal proceedings.” Since Mr. Charlo pled guilty to the DUI charge and since the whole purpose of the implied consent law is to provide evidence to obtain this very result, how can the prosecution have been prejudiced by the failure to obtain a breath sample; even if Mr. Charlo was playing games?
On the other hand, if we fail to enforce this law and Mr. Charlo is again arrested for drank driving within five years from the previous episode and is once again faced with the decision whether to take or refuse the specified test, would it not be more effective in helping him make the right decision to have the prospect of a one year license suspension on the table? There is no guarantee on such an occasion that he will satisfy the purpose of the statute by pleading guilty.
CONCLUSION
On balance, and always remembering the proper role of this Court, we cannot say that the trial court erred in concluding either that Mr. Charlo failed to sustain his burden of proof or, alternatively, that Mr. *10 Charlo, being sufficiently lucid to understand the proceedings taking place, refused to take the specified test.
DISPOSITION
The judgment of the trial court is AFFIRMED.
We Concur: CHUCK WALL, Associate Justice, GREGORY T. DUPUIS, Associate Justice.